**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| J & L MANAGEMENT CORPORATION ) | |
| OF OHIO, an Ohio corporation, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
|       v. ) | |
| ) | |
| BARAT WOODS, L.L.C., an Illinois limited ) | No. 08 CV 2016 |
| liability company, BULLEY & ANDREWS, L.L.C. ) | |
| an Illinois limited liability company, HARRIS ) | Judge Lefkow |
| N.A., a Delaware corporation, and ) | |
| UNKNOWN OWNERS, TRUSTEES, ) | Magistrate Judge Brown |
| LENDERS, & LIEN CLAIMANTS, ) | |
| ) | |
|     Defendants. ) | |

## J & L MANAGEMENT CORPORATION OF OHIO'S AMENDED VERIFIED COMPLAINT TO FORECLOSE MECHANIC'S LIEN AND FOR OTHER RELIEF

Plaintiff, J & L MANAGEMENT CORPORATION OF OHIO, by its attorneys, David A. Axelrod and Robert A. Cohen, for its Verified Complaint To Foreclose Mechanic's Lien And For Other Relief, states as follows:

### GENERAL ALLEGATIONS

1.     This is an action to foreclose on a Mechanic's Lien in the amount of Two Hundred Forty-Three Thousand, Seven Hundred Eighty-Eight and 68/100 ($243,788.68) dollars plus interest, costs and attorneys' fees incurred by J & L MANAGEMENT CORPORATION OF OHIO ("Plaintiff") in bringing a claim to enforce its lien and collect said debt.

### The Parties

2.     Plaintiff is a corporation organized under the laws of Ohio, with its principal place of business in Michigan, and as such is a citizen of the states of Ohio and Michigan.  At all

relevant times, Plaintiff was engaged in business as a demolition subcontractor and was qualified to do business in the State of Illinois.

3.      Upon information and belief, Bulley & Andrews, L.L.C. ("General Contractor") is a limited liability company organized under the laws of Illinois with its principal place of business in Chicago, Illinois, and as such is a citizen of the state of Illinois.    At all relevant times, the General Contractor was engaged in business as a general contractor.

4.      Upon information and belief, Defendant Barat Woods, L.L.C. ("Owner"), is a limited liability company organized under the laws of Illinois with its principal place of business in Lake Forest, Illinois, and as such is a citizen of the state of Illinois.  Barat Woods is the owner of certain real property located in Lake Forest, Illinois, commonly known as the former Barat College site, 700 Westleigh Road, PIN No. 16-04-200-008, ("Premises") and legally described as shown in Exhibit A hereto.

5.      On information and belief, in or about January 2006, Owner entered into a mortgage agreement with Defendant Harris N.A. encumbering the Premises.  Harris N.A., on the referenced date and subsequent thereto, had an interest in the Premises, whether as a mortgagee or otherwise.  On information and belief, Harris N.A. is a national bank operating as a foreign corporation or other entity organized under the laws of Delaware.  The remaining Defendants have or claim to have some interest in the Premises as Lien Creditors, Contractors, Encumbrancers, Trustees, Purchasers, or otherwise, the nature of which is unknown to Plaintiff. Any such interest is subordinate and inferior to the rights of Plaintiff.

**Jurisdiction And Venue**

6.      Jurisdiction is proper in this case pursuant to 28 U.S.C. 1332, in that the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

7.      Venue is proper pursuant to 28 U.S.C. Section 1391, in that the real property in question lies within the venue of this Court, many relevant acts and omissions concerning construction activities on the Premises also occurred within the venue of this Court, and at least one Defendant resides in this judicial district.

**Background Facts**

8.      On or about June 1, 2007, the General Contractor entered into a written agreement ("Prime Contract") with the Owner for the demolition and construction work at the Premises.  A true and correct copy of the Prime Contract is attached hereto as Exhibit B.

9.      On or about June 13, 2007, Plaintiff entered into a written contract with the General Contractor ("Subcontract") to perform the demolition work at the Premises called for in the General Contractor Agreement.  A true and correct copy of the Subcontract is attached hereto as Exhibit C.

10.      The Subcontract was for a fixed price of $857,900.00.

11.      At the special request of and with, on information and belief, the full knowledge and consent of the Owner, and at the request of the General Contractor, Plaintiff provided certain extra work that was an addition and part of the Subcontract for an agreed price of $14,000.00. This brought the total price under the Subcontract to $871,900.00.

12.      Plaintiff furnished all labor and material, as requested by the General Contractor, and otherwise fully performed all conditions of the Subcontract as of the date of termination.

13.    Pursuant to the Subcontract, Plaintiff was to, and did, furnish certain labor and material related to certain demolition and related work.

14.    The General Contractor knew that demolition services were not being provided gratuitously and were of value to it.

15.    On information and belief, the Owner knew of the Subcontract and gave its assent to the same.  The Owner knew that demolition services were not being provided gratuitously and were of value to it and to the Premises.

16.    All of the material, fixtures, labor and services furnished by Plaintiff were delivered to, accepted for, and incorporated into the improvement of the Premises and constitute a permanent and valuable improvement thereof.

17.    By reason of said furnishing, and after allowing all lawful credits in the amount of $628,111.32, the sum of $243,788.68 is due to Plaintiff.

18.    Plaintiff has made demand on General Contractor for payment of the above sum and General Contractor has failed to pay any part thereof.

**COUNT I**
**Mechanic's Lien Foreclosure Pursuant to Section 60/28 of the Mechanic's Lien Act**

1 - 18. Plaintiff J & L MANAGEMENT CORPORATION OF OHIO incorporates by reference herein  Paragraphs 1 – 18 of the General Allegations in their entirety as Paragraphs 1 – 18 of this Count I.

19.    On information and belief, the Owner knew of the Subcontract and gave its assent to the same.  The Owner knew that demolition services were not being provided gratuitously and were of value to it and to the Premises.

20.    All labor and materials furnished by Plaintiff were delivered to and accepted for the Premises and constituted a permanent valuable improvement to the Premises.

21.    On information and belief, the Owner owes the General Contractor additional consideration with respect to the construction and demolition work at the Premises.   On information and belief, the General Contractor is holding funds or other consideration paid to it by the Owner with respect to the construction and demolition work at the Premises.

22.    On January 24, 2008, within 90 days of its date of final furnishing, Plaintiff filed its Notice and Claim for Mechanic's Lien on Defendants.    A true and correct copy of the Notice and Claim for Mechanic's Lien is attached hereto as Exhibit D and incorporated herein by reference.

23.    Plaintiff's lien has priority over all prior encumbrances, known or unknown.

24.    On January 30, 2008, within four (4) months of its date of final furnishing, Plaintiff caused its Notice and Claim for Mechanic's Lien to be filed for record in the office of the Lake County Recorder of Deeds, Illinois as Document No. 6299437.

25.    Contemporaneously with the filing of this Complaint, Plaintiff caused a Lis Pendens Notice to be recorded in the Lake County Recorder of Deeds, Illinois.

26.    The Defendants each may have or claim to have some interest in the Premises.

27.    In addition to those persons and entities designated by name herein, there may be other persons or entities who may have, or claim to have, an interest in this action who may have or may claim some right, title, interest or lien in, to, or upon the Premises.  The name of each such other person or entity is unknown to Plaintiff and, upon diligent inquiry, cannot be ascertained.  All such other persons or entities are made party defendants to this action by the name and description of Unknown Owners, Trustees, Lenders, and Lien Claimants.

28.    The Illinois Mechanic's Lien Act (770 ILCS 60/1 et seq.) provides for recovery by the Plaintiff of interest, costs and reasonable attorneys' fees as the General Contractor failed to pay the amount of the Contract due to the Plaintiff without just cause or right.

WHEREFORE, Plaintiff prays for the following relief:

A.    That an accounting be taken as to the amount due to the Plaintiff;

B.    That Plaintiff is entitled to and has a valid Mechanic's Lien on the Premises and all improvements thereon for the amount found due thereto, plus interest, costs and attorneys' fees.

C.    That Plaintiff be entitled to and has a valid Mechanic's Lien on Plaintiff's pro rata share of any funds or other consideration due to the General Contractor from the Owner with respect to the construction and demolition work at the Property at issue in this case.

D.    That Plaintiff be entitled to and has a valid Mechanic's Lien on any funds or other consideration paid by the Owner to the General Contractor with respect to the construction and demolition work at the Property at issue in this case, up to the value of the Plaintiff's lien and other relief as prayed for herein.

E.    That Defendants be decreed to pay Plaintiff the amount found due thereto, plus interest, costs and attorneys' fees within a short day certain.

F.    That a receiver be appointed for the Premises.

G.    That in case of nonpayment of the amount found due to Plaintiff plus interest, costs and attorneys' fees, the Property be sold to satisfy such amount, plus interest, costs and attorneys' fees.

H.    That in the case of such sale, and failure to redeem therefrom pursuant to law, the Defendants and all persons claiming through or under them be forever barred and foreclosed of all right or equity of redemption in the Property.

I.    That in case the sale does not produce enough to pay Plaintiff's claim, Plaintiff be awarded a money decree for the amount found due thereto, plus interest, costs and attorneys' fees against the Defendants personally liable.

J.    Such any and all additional relief this Court deems appropriate and just.

## COUNT II
## BREACH OF CONTRACT
### (Against Bulley & Andrews, L.L.C.)

1 - 18. Plaintiff J & L MANAGEMENT CORPORATION OF OHIO incorporates by reference herein  Paragraphs 1 – 18 of the General Allegations in their entirety as Paragraphs 1 – 18 of this Count II.

19.    Plaintiff has complied with all of its obligations under the Subcontract.

20.    By its failure to pay for the services rendered and material provided pursuant to the Subcontract, the General Contractor has breached the Subcontract.

21.    Plaintiff has been damaged by reason of the General Contractor's breach of contract in the sum of $243,788.68.

22.    The General Contractor's failure to pay Plaintiff is unreasonable and vexatious, and the amount due is a sum certain ascertainable from the Subcontract.

WHEREFORE, Plaintiff, J & L MANAGEMENT CORPORATION OF OHIO, prays that this Court enter judgment in its favor and against Defendants, BULLEY & ANDREWS, L.L.C., and BARAT WOODS, L.L.C. for $243,788.68 plus prejudgment interest and costs.

**COUNT III**
**UNJUST ENRICHMENT**
**(Against Bulley & Andrews, L.L.C. and Barat Woods, L.L.C.)**
**(In the Alternative To Counts I and II)**

1 - 18. Plaintiff J & L MANAGEMENT CORPORATION OF OHIO incorporates by reference herein Paragraphs 1 – 18 of the General Allegations in their entirety as Paragraphs 1 – 18 of this Count III.

19.    The labor, materials, equipment and/or services provided by Plaintiff on the Property and at the specific request of the General Contractor constitute permanent and valuable improvement thereof and thereto.

20.    The reasonable value of the labor, materials, equipment and/or services provided by Plaintiff is $243,788.68.

21.    The General Contractor and Owner knew that the Plaintiff provided the labor, materials, equipment and/or services with the expectation of being compensated therefore. The price to be paid by the General Contractor in consideration of the Plaintiff providing labor, materials, equipment and/or services was fully disclosed. On information and belief, the Owner was aware that the General Contractor retained subcontractors and that those subcontractors expected to be paid for labor, material and services that benefitted the Property.

22.    The General Contractor has withheld payment wrongfully and without excuse for the services Plaintiff has performed. The Owner has not paid Plaintiff in the General Contractor's stead and wrongfully has not compelled the General Contractor to do so. It would be inequitable, and the General Contractor and Owner would be unjustly enriched, if the General Contractor and Owner were permitted to retain the benefits of Plaintiff's provisions of the labor, materials, equipment and/or services without paying the fair value thereof.

23.     As a direct and proximate result of the labor, materials, equipment and/or services provided thereby, Plaintiff has suffered a detriment in the amount of $243,788.68.

WHEREFORE, Plaintiff, J & L MANAGEMENT CORPORATION OF OHIO, prays that this Court enter judgment in its favor and against Defendant, BULLEY & ANDREWS, L.L.C. for $243,788.68 plus equitable interest and costs, and such other and further relief as this Court may deem just and proper.

### COUNT IV
### QUANTUM MERUIT
**(Against Bulley & Andrews, L.L.C.)**
**(In the Alternative To Counts I and II)**

1 - 18. Plaintiff J & L MANAGEMENT CORPORATION OF OHIO incorporates by reference herein  Paragraphs 1 – 18 of the General Allegations in their entirety as Paragraphs 1 – 18 of this Count IV.

19.     The labor, materials, equipment and/or services provided by Plaintiff on the Property and at the specific request of the General Contractor constitute permanent and valuable improvement thereof and thereto.

20.     The reasonable value of the labor, materials, equipment and/or services provided by Plaintiff is $243,788.68.

21.     The General Contractor knew or should have known that the Plaintiff provided the labor, materials, equipment and/or services with the expectation of being compensated therefore.

22.     The General Contractor received benefits from the Plaintiff's provision of labor, materials, equipment and/or services.

23.    Plaintiff is entitled to be compensated for the reasonable value of provision of labor, materials, equipment and/or services by the General Contractor.

WHEREFORE, Plaintiff, J & L MANAGEMENT CORPORATION OF OHIO, prays that this Court enter judgment in its favor and against Defendant BULLEY & ANDREWS, L.L.C., for $243,788.68 plus costs, and such other and further relief as this Court may deem just and proper.

J&L MANAGEMENT CORPORATION
OF OHIO


David A. Axelrod                          By:_____/s/ Robert A. Cohen_____
Robert A. Cohen                                        One of Its Attorneys
David A. Axelrod & Associates, P.C.
20 S. Clark Street, Suite 2200
Chicago, Illinois 60603
(312) 782-4600

## VERIFICATION

I, Philip Kennedy, President of J & L Management Corporation of Ohio, under penalty as provided by law pursuant to 28 U.S.C. 1746, hereby set forth in the foregoing Verified Complaint are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

_____


Subscribed and sworn
to before me this _Aug_
day of ___22___, 2008.

_Melissa A Sullivan_
Notary Public

Melissa A. Sullivan, Notary Public
State of Michigan, County of Macomb
My Commission Expires 6/14/2014
Acting in the County of _Macomb_

10

(A)    THAT PART OF LOT 5 IN ASSESSOR'S PLAT RECORDED OCTOBER 11, 1871 IN THE
NORTHEAST ¼ OF SECTION 4, TOWNSHIP 43 NORTH, RANGE 12, EAST OF THE THIRD
PRINCIPAL MERIDIAN, DESCRIBED AS FOLLOWS: COMMENCING AT THE SOUTHEAST
CORNER OF SAID NORTHEAST ¼ OF SECTION 4; THENCE NORTH ALONG THE EAST LINE OF
SAID NORTHEAST ¼ OF SAID SECTION 4, 409.55 FEET; THENCE WEST ALONG A LINE
PERPENDICULAR TO SAID EAST LINE OF THE NORTHEAST ¼ OF SECTION 4, 426.00 FEET,
MORE OR LESS, TO THE MOST EASTERLY CORNER OF A TWO STORY PORCH ATTACHED TO
AND FORMING A PART OF A FOUR STORY BRICK BUILDING, SAID MOST EASTERLY
CORNER BEING THE CORNER OF BEGINNING FOR THE DESCRIPTION OF THE PROPERTY TO
BE HEREBY DESCRIBED; THENCE NORTH 44 DEGREES, 32 MINUTES, 40 SECONDS WEST
ALONG THE EASTERLY LINE OF SAID BUILDING 63.40 FEET; THENCE NORTH 45 DEGREES,
27 MINUTES, 20 SECONDS EAST ALONG THE SOUTHERLY LINE OF SAID BUILDING 34.20
FEET; THENCE NORTH 44 DEGREES, 32 MINUTES, 40 SECONDS WEST ALONG THE
EASTERLY LINE OF SAID BUILDING 7.30 FEET; THENCE NORTH 45 DEGREES, 27 MINUTES,
20 SECONDS EAST ALONG THE SOUTHERLY LINE OF SAID BUILDING, 7.60 FEET; THENCE
NORTH 44 DEGREES, 32 MINUTES, 40 SECONDS WEST ALONG THE EASTERLY LINE OF SAID
BUILDING 12.70 FEET; THENCE SOUTH 45 DEGREES, 27 MINUTES, 20 SECONDS WEST
ALONG THE NORTHERLY LINE OF SAID BUILDING 7.60 FEET; THENCE NORTH 44 DEGREES,
32 MINUTES, 40 SECONDS WEST ALONG THE EASTERLY LINE OF SAID BUILDING 25.70
FEET, MORE OR LESS, TO A NORTHERLY CORNER OF SAID BUILDING; THENCE NORTH 44
DEGREES, 32 MINUTES, 40 SECONDS WEST 32.90 FEET; THENCE NORTH 45 DEGREES, 27
MINUTES, 20 SECONDS EAST 188.00 FEET; THENCE SOUTH 44 DEGREES, 32 MINUTES, 40
SECONDS EAST 210.00 FEET; THENCE SOUTH 45 DEGREES, 27 MINUTES, 20 SECONDS WEST
222.20 FEET, MORE OR LESS, TO A POINT SOUTH 44 DEGREES, 32 MINUTES, 40 SECONDS
EAST 68.00 FEET, MORE OR LESS, FROM THE CORNER OF BEGINNING; AND THENCE NORTH
44 DEGREES, 32 MINUTES, 40 SECONDS WEST 68 FEET, MORE OR LESS, TO SAID CORNER OF
BEGINNING; AND,

(B)    THAT PART OF GOVERNMENT LOT 1 IN THE NORTHEAST ¼ OF SECTION 4,
TOWNSHIP 43 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, DESCRIBED
AS FOLLOWS: COMMENCING AT THE POINT OF INTERSECTION OF A LINE WHICH IS
960 FEET WEST OF AND PARALLEL WITH THE EAST LINE OF SAID LOT 1 AND A LINE
WHICH IS 400 FEET SOUTH OF AND PARALLEL WITH THE NORTH LINE OF SAID LOT;
THENCE NORTHWESTERLY TO A POINT WHICH IS 305.42 FEET SOUTH OF THE NORTH LINE
OF SAID LOT AND 1033.30 FEET WEST OF THE EAST LINE OF SAID LOT; THENCE
SOUTHWESTERLY TO A POINT WHICH IS 397.74 FEET SOUTH OF THE NORTH LINE OF SAID
LOT AND 1152.07 FEET WEST OF THE EAST LINE OF SAID LOT; THENCE SOUTHEASTERLY
TO A POINT WHICH IS 634.19 FEET SOUTH OF THE NORTH LINE OF SAID LOT AND 968.83
FEET WEST OF THE EAST LINE OF SAID LOT; THENCE NORTHEASTERLY TO A POINT
WHICH IS 541.87 FEET SOUTH OF THE NORTH LINE OF SAID LOT AND 850.06 FEET WEST OF
THE EAST LINE OF SAID LOT; THENCE NORTHWESTERLY TO THE POINT OF BEGINNING;

TOGETHER WITH THE FOLLOWING EASEMENT CREATED BY DEED DATED JULY
12, 1988 AND RECORDED AUGUST 10, 1988 AS DOCUMENT 2709796 MADE BY
BARAT COLLEGE, A NON-FOR-PROFIT CORPORATION, TO NORTHERN TRUST
BANK/LAKE FOREST NATIONAL ASSOCIATION AS TRUSTEE UNDER TRUST
AGREEMENT DATED JULY 12, 1988 AND KNOWN AS TRUST NUMBER 8552:

NON-EXCLUSIVE EASEMENT IN PERPETUITY AND NON-EXCLUSIVE RIGHT OF WAY FOR INGRESS
AND EGRESS, INCLUDING THE RIGHT OF PASSAGE IN PERSON OR BY VEHICLE FROM THE TRACT
OF REAL ESTATE DESCRIBED IN PARCEL B ABOVE CONNECTING THE SAME WITH WESTLEIGH
ROAD, A PUBLIC ROAD IN LAKE COUNTY, ILLINOIS, FOR THE BENEFIT OF PREMISES LOCATED
NORTH OF AND ADJOINING THE LAND OVER THAT PART OF GOVERNMENT LOT 1 IN THE

# EXHIBIT A

NORTHEAST ¼ OF SECTION 4, TOWNSHIP 43 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, DESCRIBED AS FOLLOWS: COMMENCING AT THE POINT OF INTERSECTION OF A LINE WHICH IS 968.83 FEET WEST OF AND PARALLEL WITH THE EAST LINE OF SAID LOT WITH A LINE WHICH IS 634.19 FEET SOUTH OF AND PARALLEL WITH THE NORTH LINE OF SAID LOT; THENCE NORTH 52 DEGREES, 00 MINUTES, 44 SECONDS EAST, 20.86 FEET ALONG A LINE WHOSE EXTENSION PASSES THROUGH THE POINT OF INTERSECTION OF A LINE 850.07 FEET WEST OF AND PARALLEL WITH THE EAST LINE OF SAID LOT WITH A LINE WHICH IS 541.87 FEET SOUTH OF AND PARALLEL WITH THE NORTH LINE OF SAID LOT; THENCE SOUTH 21 DEGREES, 29 MINUTES, 00 SECONDS EAST 91.47 FEET; THENCE SOUTH 35 DEGREES, 29 MINUTES, 00 SECONDS EAST 15.54 FEET; THENCE SOUTHERLY 78.11 FEET ALONG THE ARC OF A CIRCLE OF 60.475 FEET RADIUS, CONVEX EASTERLY, TANGENT TO THE LAST DESCRIBED COURSE AND WHOSE CHORD BEARS SOUTH 1 DEGREE 31 MINUTES 00 SECONDS WEST; THENCE SOUTH 38 DEGREES, 31 MINUTES, 00 SECONDS WEST 93.50 FEET ALONG A LINE TANGENT TO SAID ARC; THENCE SOUTHERLY 331.435 FEET ALONG THE ARC OF A CIRCLE OF 397.00 FEET RADIUS CONVEX WESTERLY, TANGENT TO THE LAST DESCRIBED COURSE AND WHOSE CHORD BEARS SOUTH 14 DEGREES, 36 MINUTES, 00 SECONDS WEST; THENCE SOUTH 9 DEGREES, 19 MINUTES, 36 00 SECONDS EAST 34.54 FEET ALONG A LINE TANGENT TO THE LAST DESCRIBED ARC; THENCE SOUTH 3 DEGREES, 21 MINUTES, 38 SECONDS EAST 52.48 FEET; THENCE SOUTH 29 DEGREES, 09 MINUTES, 00 SECONDS EAST 43.67 FEET TO A POINT ON THE NORTHERLY LINE OF A PUBLIC STREET DEDICATED PER DOCUMENT 428013 AND RECORDED AUGUST 25, 1936, SAID POINT BEING 118.03 FEET EASTERLY (AS MEASURED ALONG SAID NORTHERLY LINE) FROM THE NORTHEASTERLY LINE OF THE 70 FOOT STRIP OF LAND LYING EAST OF AND ADJOINING THE CHICAGO AND NORTHWESTERN RAILWAY COMPANY RIGHT OF WAY; THENCE NORTH 82 DEGREES, 45 MINUTES, 00 SECONDS WEST 24.85 FEET ALONG THE NORTHERLY LINE OF SAID PUBLIC STREET; THENCE NORTH 29 DEGREES, 09 MINUTES, 00 SECONDS WEST 33.50 FEET; THENCE NORTH 3 DEGREES, 21 MINUTES, 38 SECONDS WEST 56.02 FEET; THENCE NORTH 9 DEGREES, 19 MINUTES, 00 SECONDS WEST 33.50 FEET; THENCE NORTHERLY 348.13 FEET ALONG THE ARC OF A CIRCLE OF 417.000 FEET RADIUS, CONVEX WESTERLY, TANGENT TO THE LAST DESCRIBED COURSE AND WHOSE CHORD BEARS NORTH 14 DEGREES, 36 MINUTES, 00 SECONDS EAST; THENCE NORTH 38 DEGREES, 31 MINUTES, 00 SECONDS EAST 93.50 FEET ALONG A LINE TANGENT TO THE LAST DESCRIBED ARC; THENCE NORTHERLY 52.27 FEET ALONG THE ARC OF A CIRCLE OF 40.475 FEET RADIUS, CONVEX EASTERLY, TANGENT TO THE LAST DESCRIBED COURSE AND WHOSE CHORD BEARS NORTH ONE DEGREE 31 MINUTES 00 SECONDS EAST; THENCE NORTH 35 DEGREES, 29 MINUTES, 00 SECONDS WEST 18.00 FEET ALONG A LINE TANGENT TO THE LAST DESCRIBED ARC; THENCE NORTH 21 DEGREES, 29 MINUTES, 00 SECONDS WEST 88.00 FEET TO THE POINT OF BEGINNING, ALL IN LAKE COUNTY, ILLINOIS, AS CONTAINED IN THE DEED DATED JULY 12, 1988 AND RECORDED AUGUST 10, 1988 AS DOCUMENT 2709796 MADE BY BARAT COLLEGE, A NOT-FOR-PROFIT CORPORATION, TO NORTHERN TRUST BANK/LAKE FOREST NATIONAL ASSOCIATION AS TRUSTEE UNDER TRUST AGREEMENT DATED JULY 12, 1988 AND KNOWN AS TRUST NUMBER 8552.

PIN: 16-04-200-008
Common Address: 700 East Westleigh Road, Lake Forest, Illinois



# AIA® Document A111™ – 1997

### Standard Form of Agreement Between Owner and Contractor
where the basis for payment is the COST OF THE WORK PLUS A FEE with a negotiated
Guaranteed Maximum Price

AGREEMENT made as of the   1st    day of    June      in the year  2007
*(In words, indicate day, month and year)*

BETWEEN the Owner:
*(Name, address and other information)*

Barat Woods, LLC
P O Box 9
Lake Forest, IL 60045

and the Contractor:
*(Name, address and other information)*

Bulley & Andrews, LLC
1755 W. Armitage Avenue
Chicago, IL 60622

The Project is:
*(Name and location)*

Barat Woods Redevelopment
Lake Forest, IL

The Architect is:
*(Name, address and other information)*

Melcehar Architects
711 N. McKinley Road
Lake Forest, IL 60045

The Owner and Contractor agree as follows.

---

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

This document is not intended for use in competitive bidding.

AIA Document A201-1997, General Conditions of the Contract for Construction, is adopted in this document by reference.   Do not use with other general conditions unless this document is modified.

This document has been approved and endorsed by the Associated General Contractors of America.

---

Init.

/

AIA Document A111™ – 1997. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:42:23 on 11/21/2007 under Order No.1000279992_1 which expires on 1/17/2008, and is not for resale.
User Notes:                                        (3562258118)

1

# EXHIBIT B

## ARTICLE 1  THE CONTRACT DOCUMENTS

The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of this Agreement, other documents listed in this Agreement and Modifications issued after execution of this Agreement; these form the Contract, and are as fully a part of the Contract as if attached to this Agreement or repeated herein. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Contract Documents, other than Modifications, appears in Article 15. If anything in the other Contract Documents is inconsistent with this Agreement, this Agreement shall govern.

## ARTICLE 2  THE WORK OF THIS CONTRACT

The Contractor shall fully execute the Work described in the Contract Documents, except to the extent specifically indicated in the Contract Documents to be the responsibility of others.

## ARTICLE 3  RELATIONSHIP OF THE PARTIES

The Contractor accepts the relationship of trust and confidence established by this Agreement and covenants with the Owner to cooperate with the Architect and exercise the Contractor's skill and judgment in furthering the interests of the Owner; to furnish efficient business administration and supervision; to furnish at all times an adequate supply of workers and materials; and to perform the Work in an expeditious and economical manner consistent with the Owner's interests. The Owner agrees to furnish and approve, in a timely manner, information required by the Contractor and to make payments to the Contractor in accordance with the requirements of the Contract Documents.

## ARTICLE 4  DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

§ 4.1 The date of commencement of the Work shall be the date of this Agreement unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Owner.
*(Insert the date of commencement, if it differs from the date of this Agreement or, if applicable, state that the date will be fixed in a notice to proceed.)* Complete Demolition 11/15/07

Within 10 days after receipt of permit and for construction drawings.

If, prior to commencement of the Work, the Owner requires time to file mortgages, mechanic's liens and other security interests, the Owner's time requirement shall be as follows:

§ 4.2 The Contract Time shall be measured from the date of commencement.
§ 4.3 The Contractor shall achieve Substantial Completion of the entire Work not later than    TBD    days from the date of commencement, or as follows:Complete Demolition 11/15/2007
*(Insert number of calendar days. Alternatively, a calendar date may be used when coordinated with the date of commencement. Unless stated elsewhere in the Contract Documents, insert any requirements for earlier Substantial Completion of certain portions of the Work.)*

| Portion of Work | Substantial Completion date |
| --- | --- |
| | |

, subject to adjustments of this Contract Time as provided in the Contract Documents.
*(Insert provisions, if any, for liquidated damages relating to failure to complete on time, or for bonus payments for early completion of the Work.)*

## ARTICLE 5  BASIS FOR PAYMENT

### § 5.1 CONTRACT SUM

§ 5.1.1 The Owner shall pay the Contractor the Contract Sum in current funds for the Contractor's performance of the Contract. The Contract Sum is the Cost of the Work as defined in Article 7 plus the Contractor's Fee, plus insurance.

**Init.**

**/**

AIA Document A111™ – 1997. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:42:23 on 11/21/2007 under Order No.1000279992_1 which expires on 1/17/2008, and is not for resale.
User Notes:                                                                                                              (3562256118)

2

**§ 5.1.2** The Contractor's Fee is:
*(State a lump sum, percentage of Cost of the Work or other provision for determining the Contractor's Fee, and describe the method of adjustment of the Contractor's Fee for changes in the Work.)*

(A through F below included in Exhibit C)
A.    The Contractor's Fee is 2.5% times the Cost of the Work (excluding change orders)
B.    The Contractor's General Condition's per month are estimated to be (TBD). This amount will be used to add General Conditions to this contract for time extensions. The amount billed each month will be the cost plus fees and markups for that month. The General Conditions are to be used as a guideline.
C.    Mark-up on Self-performed work by the Contractor including General Conditions, will be ten percent (10%) of the Cost of such Work, plus the Contractor's Fee of 8% times the cost of such work.
D.    All labor by Contractor will be marked up 3% for small tools. This does not include any items purchased specifically for this project and consumed on this project that are billed as costs. This does not include any life-safety items.
E.    Mark-up on additive change orders to this work will be 10% for overhead and profit. Markup on deductive changes to the work will be zero percent (0%).
F.    Insurance will be one percent (1%) times the cost of the work and Contractor's fee.

**§ 5.2 GUARANTEED MAXIMUM PRICE**
**§ 5.2.1** The sum of the Cost of the Work and the Contractor's Fee is guaranteed by the Contractor not to exceed (One Million Seven Hundred Eighty-Five Thousand One Hundred Seventy Dollars and 00/100) (\$ 1,785,170.00), subject to additions and deductions by Change Order as provided in the Contract Documents. Such maximum sum is referred to in the Contract Documents as the Guaranteed Maximum Price. Costs which would cause the Guaranteed Maximum Price to be exceeded shall be paid by the Contractor without reimbursement by the Owner. A GMP can be established 4 weeks after receipt of architectural, mechanical, electrical, plumbing and audio visual drawings and specifications.
*(Insert specific provisions if the Contractor is to participate in any savings.)*

**§ 5.2.2** The Guaranteed Maximum Price is based on the following alternates, if any, which are described in the Contract Documents and are hereby accepted by the Owner:
*(State the numbers or other identification of accepted alternates. If decisions on other alternates are to be made by the Owner subsequent to the execution of this Agreement, attach a schedule of such other alternates showing the amount for each and the date when the amount expires.)*

**§ 5.2.3** Unit prices, if any, are as follows: None

| Description | Units | Price (\$ 0.00) |
|---|---|---|

**§ 5.2.4** Allowances, if any, are as follows: None
*(Identify and state the amounts of any allowances, and state whether they include labor, materials, or both.)*

| Allowance | Amount (\$ 0.00) | Included Items |
|---|---|---|

**§ 5.2.5** Assumptions, if any, on which the Guaranteed Maximum Price is based are as follows:

Init.    AIA Document A111™ – 1997. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:42:23 on 11/21/2007 under Order No.1000279992_1 which expires on 1/17/2008, and is not for resale.
User Notes:                                                                                              (3562258118)

/

3

§ 5.2.6 To the extent that the Drawings and Specifications are anticipated to require further development by the Architect, the Contractor has provided in the Guaranteed Maximum Price for such further development consistent with the Contract Documents and reasonably inferable therefrom. Such further development does not include such things as changes in scope, systems, kinds and quality of materials, finishes or equipment, all of which, if required, shall be incorporated by Change Order. This paragraph is only applicable after the GMP is established.

## ARTICLE 6   CHANGES IN THE WORK

§ 6.1 Adjustments to the Guaranteed Maximum Price on account of changes in the Work may be determined by any of the methods listed in Section 7.3.3 of AIA Document A201-1997.

§ 6.2 In calculating adjustments to subcontracts (except those awarded with the Owner's prior consent on the basis of cost plus a fee), the terms "cost" and "fee" as used in Section 7.3.3.3 of AIA Document A201-1997 and the terms "costs" and "a reasonable allowance for overhead and profit" as used in Section 7.3.6 of AIA Document A201-1997 shall have the meanings assigned to them in AIA Document A201-1997 and shall not be modified by Articles 5, 7 and 8 of this Agreement. Adjustments to subcontracts awarded with the Owner's prior consent on the basis of cost plus a fee shall be calculated in accordance with the terms of those subcontracts.

§ 6.3 In calculating adjustments to the Guaranteed Maximum Price, the terms "cost" and "costs" as used in the above-referenced provisions of AIA Document A201-1997 shall mean the Cost of the Work as defined in Article 7 of this Agreement and the terms "fee" and "a reasonable allowance for overhead and profit" shall mean the Contractor's Fee as defined in Section 5.1.2 of this Agreement.

§ 6.4 If no specific provision is made in Section 5.1 for adjustment of the Contractor's Fee in the case of changes in the Work, or if the extent of such changes is such, in the aggregate, that application of the adjustment provisions of Section 5.1 will cause substantial inequity to the Owner or Contractor, the Contractor's Fee shall be equitably adjusted on the basis of the Fee established for the original Work, and the Guaranteed Maximum Price shall be adjusted accordingly.

## ARTICLE 7   COSTS TO BE REIMBURSED   (All of Article 7 included in Exhibit C)
### § 7.1 COST OF THE WORK
The term Cost of the Work shall mean costs necessarily incurred by the Contractor in the proper performance of the Work. Such costs shall be at rates not higher than the standard paid at the place of the Project except with prior consent of the Owner. The Cost of the Work shall include only the items set forth in this Article 7.  Costs shall include all costs to date incurred by the Contractor as pertains to this project.

### § 7.2 LABOR COSTS
§ 7.2.1 Wages of construction workers directly employed by the Contractor to perform the construction of the Work at the site or, with the Owner's approval, at off-site workshops.

§ 7.2.2 Wages or salaries of the Contractor's supervisory and administrative personnel when stationed at the site with the Owner's approval.

§ 7.2.3 Wages and salaries of the Contractor's supervisory or administrative personnel engaged, at factories, workshops or on the road, in expediting the production or transportation of materials or equipment required for the Work, but only for that portion of their time required for the Work.

§ 7.2.4 Costs paid or incurred by the Contractor for taxes, insurance, contributions, assessments and benefits required by law or collective bargaining agreements and, for personnel not covered by such agreements, customary benefits such as sick leave, medical and health benefits, holidays, vacations and pensions, provided such costs are based on wages and salaries included in the Cost of the Work under Sections 7.2.1 through 7.2.3.

### § 7.3 SUBCONTRACT COSTS
§ 7.3.1 Payments made by the Contractor to Subcontractors in accordance with the requirements of the subcontracts.

AIA Document A111™ – 1997. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:42:23 on 11/21/2007 under Order No.1000279992_1 which expires on 1/17/2008, and is not for resale.
User Notes:                                                                                                              (3562256118)

Init.

/

**§ 7.4 COSTS OF MATERIALS AND EQUIPMENT INCORPORATED IN THE COMPLETED CONSTRUCTION**
**§ 7.4.1** Costs, including transportation and storage, of materials and equipment incorporated or to be incorporated in the completed construction.

**§ 7.4.2** Costs of materials described in the preceding Section 7.4.1 in excess of those actually installed to allow for reasonable waste and spoilage. Unused excess materials, if any, shall become the Owner's property at the completion of the Work or, at the Owner's option, shall be sold by the Contractor. Any amounts realized from such sales shall be credited to the Owner as a deduction from the Cost of the Work.

**§ 7.5 COSTS OF OTHER MATERIALS AND EQUIPMENT, TEMPORARY FACILITIES AND RELATED ITEMS**
**§ 7.5.1** Costs, including transportation and storage, installation, maintenance, dismantling and removal of materials, supplies, temporary facilities, machinery, equipment, and hand tools not customarily owned by construction workers or fully consumed during the project, that are provided by the Contractor at the site and fully consumed in the performance of the Work; and cost (less salvage value) of such items if not fully consumed, whether sold to others or retained by the Contractor. Cost for items previously used by the Contractor shall mean fair market value.

**§ 7.5.2** Rental charges for temporary facilities, machinery, equipment, and hand tools not customarily owned by construction workers that are provided by the Contractor at the site, whether rented from the Contractor or others, and costs of transportation, installation, minor repairs and replacements, dismantling and removal thereof. Rates and quantities of equipment rented shall be subject to the Owner's prior approval.

**§ 7.5.3** Costs of removal of debris from the site.

**§ 7.5.4** Costs of document reproductions, facsimile transmissions and long-distance telephone calls, postage and parcel delivery charges, telephone service at the site and reasonable petty cash expenses of the site office.

**§ 7.5.5** That portion of the reasonable expenses of the Contractor's personnel incurred while traveling in discharge of duties connected with the Work.

**§ 7.5.6** Costs of materials and equipment suitably stored off the site at a mutually acceptable location, if approved in advance by the Owner.

**§ 7.6 MISCELLANEOUS COSTS**
**§ 7.6.1** That portion of insurance and bond premiums that can be directly attributed to this Contract:
**§ 7.6.2** Sales, use or similar taxes imposed by a governmental authority that are related to the Work.

**§ 7.6.3** Fees and assessments for the building permit and for other permits, licenses and inspections for which the Contractor is required by the Contract Documents to pay.

**§ 7.6.4** Fees of laboratories for tests required by the Contract Documents, except those related to defective or nonconforming Work for which reimbursement is excluded by Section 13.5.3 of AIA Document A201-1997 or other provisions of the Contract Documents, and which do not fall within the scope of Section 7.7.3.

**§ 7.6.5** Royalties and license fees paid for the use of a particular design, process or product required by the Contract Documents; the cost of defending suits or claims for infringement of patent rights arising from such requirement of the Contract Documents; unless through no fault of Owner and payments made in accordance with legal judgments against the Contractor resulting from such suits or claims and payments of settlements made with the Owner's written consent. However, such costs of legal defenses, judgments and settlements shall not be included in the calculation of the Contractor's Fee or subject to the Guaranteed Maximum Price. If such royalties, fees and costs are excluded by the last sentence of Section 3.17.1 of AIA Document A201-1997 or other provisions of the Contract Documents, then they shall not be included in the Cost of the Work.

**§ 7.6.6** Data processing costs related to the Work.

**§ 7.6.7** Deposits lost for causes other than the Contractor's negligence or failure to fulfill a specific responsibility to the Owner as set forth in the Contract Documents.

Init.

AIA Document A111™ – 1997. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:42:23 on 11/21/2007 under Order No.1000279992_1 which expires on 1/17/2008, and is not for resale.
User Notes:     (3562258116)

5

§ 7.6.8 Legal, mediation and arbitration costs, including attorneys' fees, other than those arising from disputes between the Owner and Contractor, reasonably incurred by the Contractor in the performance of the Work and with the Owner's prior written approval; which approval shall not be unreasonably withheld.

§ 7.6.9 Expenses incurred in accordance with the Contractor's standard personnel policy for relocation and temporary living allowances of personnel required for the Work, if approved in writing by the Owner.

§ 7.7 OTHER COSTS AND EMERGENCIES
§ 7.7.1 Other costs incurred in the performance of the Work if and to the extent approved in advance in writing by the Owner.

§ 7.7.2 Costs due to emergencies incurred in taking action to prevent threatened damage, injury or loss in case of an emergency affecting the safety of persons and property, as provided in Section 10.6 of AIA Document A201-1997.

§ 7.7.3 Costs of repairing or correcting damaged or nonconforming Work executed by the Contractor, Subcontractors or suppliers, provided that such damaged or nonconforming Work was not caused by negligence or failure to fulfill a specific responsibility of the Contractor and only to the extent that the cost of repair or correction is not recoverable by the Contractor from insurance, sureties, Subcontractors or suppliers.

ARTICLE 8    COSTS NOT TO BE REIMBURSED
§ 8.1 The Cost of the Work shall not include:

§ 8.1.1 Salaries and other compensation of the Contractor's personnel stationed at the Contractor's principal office or offices other than the site office, except as specifically provided in Sections 7.2.2 and 7.2.3 or as may be provided in Article 14.

§ 8.1.2 Expenses of the Contractor's principal office and offices other than the site office.

§ 8.1.3 Overhead and general expenses, except as may be expressly included in Article 7.

§ 8.1.4 The Contractor's capital expenses, including interest on the Contractor's capital employed for the Work.

§ 8.1.5 Rental costs of machinery and equipment, except as specifically provided in Section 7.5.2.

§ 8.1.6 Except as provided in Section 7.7.3 of this Agreement, costs due to the negligence or failure to fulfill a specific responsibility of the Contractor, Subcontractors and suppliers or anyone directly or indirectly employed by any of them or for whose acts any of them may be liable.

§ 8.1.7 Any cost not specifically and expressly described in Article 7.

§ 8.1.8 Costs, other than costs included in Change Orders approved by the Owner, that would cause the Guaranteed Maximum Price to be exceeded.

ARTICLE 9    DISCOUNTS, REBATES AND REFUNDS
§ 9.1 Cash discounts obtained on payments made by the Contractor shall accrue to the Owner if (1) before making the payment, the Contractor included them in an Application for Payment and received payment therefor from the Owner, or (2) the Owner has deposited funds with the Contractor with which to make payments; otherwise, cash discounts shall accrue to the Contractor. Trade discounts, rebates, refunds and amounts received from sales of surplus materials and equipment shall accrue to the Owner, and the Contractor shall make provisions so that they can be secured.

§ 9.2 Amounts that accrue to the Owner in accordance with the provisions of Section 9.1 shall be credited to the Owner as a deduction from the Cost of the Work.

ARTICLE 10    SUBCONTRACTS AND OTHER AGREEMENTS
§ 10.1 Those portions of the Work that the Contractor does not customarily perform with the Contractor's own personnel shall be performed under subcontracts or by other appropriate agreements with the Contractor. The Owner

Init.

/

AIA Document A111™ – 1997. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:42:23 on 11/21/2007 under Order No.1000276982_1 which expires on 1/17/2008, and is not for resale.
User Notes:                                                                                                      (3562268118)

may designate specific persons or entities from whom the Contractor shall obtain bids. The Contractor shall obtain bids from Subcontractors and from suppliers of materials or equipment fabricated especially for the Work and shall deliver such bids to the Owner. The Owner shall then determine, with the advice of the Contractor, which bids will be accepted. The Contractor shall not be required to contract with anyone to whom the Contractor has reasonable objection.

§ 10.2 If a specific bidder among those whose bids are delivered by the Contractor to the Architect (1) is recommended to the Owner by the Contractor; (2) is qualified to perform that portion of the Work; and (3) has submitted a bid that conforms to the requirements of the Contract Documents without reservations or exceptions, but the Owner requires that another bid be accepted, then the Contractor may require that a Change Order be issued to adjust the Guaranteed Maximum Price by the difference between the bid of the person or entity recommended to the Owner by the Contractor and the amount of the subcontract or other agreement actually signed with the person or entity designated by the Owner.

§ 10.3 Subcontracts or other agreements shall conform to the applicable payment provisions of this Agreement, and shall not be awarded on the basis of cost plus a fee without the prior consent of the Owner.

## ARTICLE 11  ACCOUNTING RECORDS
The Contractor shall keep full and detailed accounts and exercise such controls as may be necessary for proper financial management under this Contract, and the accounting and control systems shall be satisfactory to the Owner. The Owner and the Owner's accountants shall be afforded access to, and shall be permitted to audit and copy, the Contractor's records, books, correspondence, instructions, drawings, receipts, subcontracts, purchase orders, vouchers, memoranda and other data relating to this Contract, and the Contractor shall preserve these for a period of three years after final payment, or for such longer period as may be required by law.

## ARTICLE 12  PAYMENTS
### § 12.1 PROGRESS PAYMENTS
§ 12.1.1 Based upon Applications for Payment submitted to the Owner by the Contractor, the Owner shall make progress payments on account of the Contract Sum to the Contractor as provided below and elsewhere in the Contract Documents. Owner shall pay Contractor for all work directed prior to this contract.

§ 12.1.2 The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:

§ 12.1.3 Provided that an Application for Payment is received by the Owner not later than the  1st  day of a month, the Owner shall make payment to the Contractor not later than the  last  day of the same  month. If an Application for Payment is received by the Owner after the application date fixed above, payment shall be made by the Owner not later than  thirty  (  30  ) days after the Owner receives the Application for Payment.

§ 12.1.4 With each Application for Payment, the Contractor shall submit payrolls, petty cash accounts, receipted invoices or invoices with check vouchers attached, and any other evidence required by the Owner to demonstrate that cash disbursements already made by the Contractor on account of the Cost of the Work equal or exceed (1) progress payments already received by the Contractor; less (2) that portion of those payments attributable to the Contractor's Fee; plus (3) payrolls for the period covered by the present Application for Payment.

§ 12.1.5 Each Application for Payment shall be based on the most recent schedule of values submitted by the Contractor in accordance with the Contract Documents. The schedule of values shall allocate the entire Guaranteed Maximum Price among the various portions of the Work, except that the Contractor's Fee shall be shown as a single separate item. The schedule of values shall be prepared in such form and supported by such data to substantiate its accuracy as the Owner may require. This schedule, unless objected to by the Owner, shall be used as a basis for reviewing the Contractor's Applications for Payment.

§ 12.1.6 Applications for Payment shall show the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment. The percentage of completion shall be the lesser of (1) the percentage of that portion of the Work which has actually been completed; or (2) the percentage obtained by

**Init.**

**/**

AIA Document A111™ – 1997. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:42:23 on 11/21/2007 under Order No.1000279992_1 which expires on 1/17/2008, and is not for resale.
User Notes:                                                                                                  (3562256118)

dividing (a) the expense that has actually been incurred by the Contractor on account of that portion of the Work for which the Contractor has made or intends to make actual payment prior to the next Application for Payment by (b) the share of the Guaranteed Maximum Price allocated to that portion of the Work in the schedule of values.

§ 12.1.7 Subject to other provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

.1    take that portion of the Guaranteed Maximum Price properly allocable to completed Work as determined by multiplying the percentage of completion of each portion of the Work by the share of the Guaranteed Maximum Price allocated to that portion of the Work in the schedule of values. Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute shall be included as provided in Section 7.3.8 of AIA Document A201-1997;

.2    add that portion of the Guaranteed Maximum Price properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work, or if approved in advance by the Owner, suitably stored off the site at a location agreed upon in writing;

.3    add the Contractor's Fee, less retainage of ten percent ( 10% ).The Contractor's Fee shall be computed upon the Cost of the Work described in the two preceding Clauses at the rate stated in Section 5.1.2 or, if the Contractor's Fee is stated as a fixed sum in that Subparagraph, shall be an amount that bears the same ratio to that fixed-sum fee as the Cost of the Work in the two preceding Clauses bears to a reasonable estimate of the probable Cost of the Work upon its completion;

.4    subtract the aggregate of previous payments made by the Owner;

.5    subtract the shortfall, if any, indicated by the Contractor in the documentation required by Section 12.1.4 to substantiate prior Applications for Payment, or resulting from errors subsequently discovered by the Owner's accountants in such documentation; and

.6    subtract amounts, if any, for which the Architect has withheld or nullified a Certificate for Payment as provided in Section 9.5 of AIA Document A201-1997.

§ 12.1.8 Except with the Owner's prior approval, payments to Subcontractors shall be subject to retainage of not less than ten percent ( 10% ). The Owner and the Contractor shall agree upon a mutually acceptable procedure for review and approval of payments and retention for Subcontractors.

12.1.8.1. Retainage shall be reduced to five percent (5%) upon fifty percent (50%) completion of a line item for that line item. Release of all retainage may be granted upon the joint approval of the Owner.

§ 12.1.9 In taking action on the Contractor's Applications for Payment, the Owner shall be entitled to rely on the accuracy and completeness of the information furnished by the Contractor and shall not be deemed to represent that the Owner has made a detailed examination, audit or arithmetic verification of the documentation submitted in accordance with Section 12.1.4 or other supporting data; that the Owner has made exhaustive or continuous on-site inspections or that the Owner has made examinations to ascertain how or for what purposes the Contractor has used amounts previously paid on account of the Contract. Such examinations, audits and verifications, if required by the Owner, will be performed by the Owner's accountants acting in the sole interest of the Owner.

§ 12.2 FINAL PAYMENT
§ 12.2.1 Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Contractor when:

.1    the Contractor has fully performed the Contract except for the Contractor's responsibility to correct Work as provided in Section 12.2.2 of AIA Document A201-1997, and to satisfy other requirements, if any, which extend beyond final payment; and

.2    a final Certificate for Payment has been issued by the Architect.

Init.

/

AIA Document A111™ – 1997. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:42:23 on 11/21/2007 under Order No.1000279992_1 which expires on 1/17/2008, and is not for resale.
User Notes:                                                                                                          (3562258116)

**§ 12.2.2** The Owner's final payment to the Contractor shall be made no later than 30 days after final completion.

**§ 12.2.3** The Owner's accountants will review and report in writing on the Contractor's final accounting within 30 days after delivery of the final accounting to the Owner by the Contractor. Based upon such Cost of the Work as the Owner's accountants report to be substantiated by the Contractor's final accounting, and provided the other conditions of Section 12.2.1 have been met, the Owner will, within seven days after receipt of the written report of the Owner's accountants, either issue to Contractor, or notify the Contractor in writing of the Owner's reasons for withholding a certificate as provided in Section 9.5.1 of the AIA Document A201-1997. The time periods stated in this Section 12.2.3 supersede those stated in Section 9.4.1 of the AIA Document A201-1997.

**§ 12.2.4** If the Owner's accountants report the Cost of the Work as substantiated by the Contractor's final accounting to be less than claimed by the Contractor, the Contractor shall be entitled to demand arbitration of the disputed amount without a further decision of the Architect. Such demand for arbitration shall be made by the Contractor within 30 days after the Contractor's receipt of a copy of the Architect's final Certificate for Payment; failure to demand arbitration within this 30-day period shall result in the substantiated amount reported by the Owner's accountants becoming binding on the Contractor. Pending a final resolution by arbitration, the Owner shall pay the Contractor the amount certified in the Architect's final Certificate for Payment.

**§ 12.2.5** If, subsequent to final payment and at the Owner's request, the Contractor incurs costs described in Article 7 and not excluded by Article 8 to correct defective or nonconforming Work, the Owner shall reimburse the Contractor such costs and the Contractor's Fee applicable thereto on the same basis as if such costs had been incurred prior to final payment, but not in excess of the Guaranteed Maximum Price. If the Contractor has participated in savings as provided in Section 5.2, the amount of such savings shall be recalculated and appropriate credit given to the Owner in determining the net amount to be paid by the Owner to the Contractor.

**ARTICLE 13  TERMINATION OR SUSPENSION**
**§ 13.1** The Contract may be terminated by the Contractor, or by the Owner for convenience, as provided in Article 14 of AIA Document A201-1997. However, the amount to be paid to the Contractor under Section 14.1.3 of AIA Document A201-1997 shall not exceed the amount the Contractor would be entitled to receive under Section 13.2 below, except that the Contractor's Fee shall be calculated as if the Work had been fully completed by the Contractor, including a reasonable estimate of the Cost of the Work for Work not actually completed.

**§ 13.2** The Contract may be terminated by the Owner for cause as provided in Article 14 of AIA Document A201-1997. The amount, if any, to be paid to the Contractor under Section 14.2.4 of AIA Document A201-1997 shall not cause the Guaranteed Maximum Price to be exceeded, nor shall it exceed an amount calculated as follows:

**§ 13.2.1** Take the Cost of the Work incurred by the Contractor to the date of termination;

**§ 13.2.2** Add the Contractor's Fee computed upon the Cost of the Work to the date of termination at the rate stated in Section 5.1.2 or, if the Contractor's Fee is stated as a fixed sum in that Section, an amount that bears the same ratio to that fixed-sum Fee as the Cost of the Work at the time of termination bears to a reasonable estimate of the probable Cost of the Work upon its completion; and

**§ 13.2.3** Subtract the aggregate of previous payments made by the Owner.

**§ 13.3** The Owner shall also pay the Contractor fair compensation, either by purchase or rental at the election of the Owner, for any equipment owned by the Contractor that the Owner elects to retain and that is not otherwise included in the Cost of the Work under Section 13.2.1. To the extent that the Owner elects to take legal assignment of subcontracts and purchase orders (including rental agreements), the Contractor shall, as a condition of receiving the payments referred to in this Article 13, execute and deliver all such papers and take all such steps, including the legal assignment of such subcontracts and other contractual rights of the Contractor, as the Owner may require for the purpose of fully vesting in the Owner the rights and benefits of the Contractor under such subcontracts or purchase orders.

Init.

AIA Document A111™ – 1997. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:42:23 on 11/21/2007 under Order No.1000279992_1 which expires on 1/17/2008, and is not for resale.
User Notes:                                                                    (3982258118)

§ 13.4 The Work may be suspended by the Owner as provided in Article 14 of AIA Document A201-1997; in such case, the Guaranteed Maximum Price and Contract Time shall be increased as provided in Section 14.3.2 of AIA Document A201-1997 except that the term "profit" shall be understood to mean the Contractor's Fee as described in Sections 5.1.2 and Section 6.4 of this Agreement.

### ARTICLE 14  MISCELLANEOUS PROVISIONS
§ 14.1 Where reference is made in this Agreement to a provision AIA Document A201-1997 or another Contract Document, the reference refers to that provision as amended or supplemented by other provisions of the Contract Documents.

§ 14.2 Payments due and unpaid under the Contract shall bear interest from the date payment is due at the rate stated below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.
*(Insert rate of interest agreed upon, if any.)*

1% above prevailing rate charged by Northern Trust Bank

*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's and Contractor's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*

§ 14.3 The Owner's representative is:
*(Name, address and other information.)*
Robert Shaw
Barat Woods, LLC
P O Box 9
Lake Forest, IL 60045

§ 14.4 The Contractor's representative is:
*(Name, address and other information.)*

Paul Plapp/Paul Hellermann
Bulley & Andrews, LLC
1755 W. Armitage Ave.,
Chicago, IL 60622

§ 14.5 Neither the Owner's nor the Contractor's representative shall be changed without ten days' written notice to the other party.

§ 14.6 Other provisions:

14.6.1   On the first application, Contractor will furnish its partial waiver of lien in the amount of the application. Assuming prior partial applications have been paid, the Contractor will furnish with each succeeding partial application, a current waiver of lien and the applicable waivers of lien and affidavits from Subcontractors for the previous partial application. On the final application, the Contractor will furnish its final waiver of lien and applicable waivers and affidavits from its Subcontractors.

14.6.2   The cost for rental equipment shall be reimbursed to the Contractor at the rates charged to it by the lessor. Equipment owned by Contractor and used on the job will be charged at eighty percent (80%) of the established rate as shown in the newest version of the national average rates compiled by the Association of Equipment Distributions. (Included in Exhibit C)

14.6.3   Small tools required for the execution of the Work will be billed at a flat rate of three percent (3.0%) of total labor costs. Small tools are classified as all hand tools, including power saws, electric drills, extension

AIA Document A111™ – 1997. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:42:23 on 11/21/2007 under Order No.1000279992_1 which expires on 1/17/2008, and is not for resale.
User Notes:                                                                                                        (3962258118)

Init.

/

10

cords, etc., but does not include our equipment items such as concrete breakers, air compressors, table saws, etc., which will be charged as equipment items. (Included in Exhibit C)

14.6.4   Hourly rates as follows:   See Exhibit "A"

**ARTICLE 15   ENUMERATION OF CONTRACT DOCUMENTS**
§ 15.1 The Contract Documents, except for Modifications issued after execution of this Agreement, are enumerated as follows:

§ 15.1.1 The Agreement is this executed 1997 edition of the Standard Form of Agreement Between Owner and Contractor, AIA Document A111-1997.

§ 15.1.2 The General Conditions are the 1997 edition of the General Conditions of the Contract for Construction, AIA Document A201-1997.

§ 15.1.3 The Supplementary and other Conditions of the Contract are those contained in the Project Manual dated , and are as follows:

| Document | Title | Pages |
|---|---|---|

§ 15.1.4 The Specifications are those contained in the Project Manual dated as in Section 15.1.3, and are as follows:
*(Either list the Specifications here or refer to an exhibit attached to this Agreement.)*

*(Table deleted)*
§ 15.1.5 The Drawings are as follows, and are dated   unless a different date is shown below:
*(Either list the Drawings here or refer to an exhibit attached to this Agreement.)*
*(Table deleted)*
None
§ 15.1.6 The Addenda, if any, are as follows: N/A

| Number | Date | Pages |
|---|---|---|

Portions of Addenda relating to bidding requirements are not part of the Contract Documents unless the bidding requirements are also enumerated in this Article 15.

§ 15.1.7 Other Documents, if any, forming part of the Contract Documents are as follows:
*(List here any additional documents, such as a list of alternates that are intended to form part of the Contract Documents. AIA Document A201-1997 provides that bidding requirements such as advertisement or invitation to bid, Instructions to Bidders, sample forms and the Contractor's bid are not part of the Contract Documents unless enumerated in this Agreement. They should be listed here only if intended to be part of the Contract Documents.)*

**ARTICLE 16   INSURANCE AND BONDS**
*(Paragraph deleted)*

| Type of insurance | Limit of liability |
|---|---|
| Insurance as provided previously. No bond required. | Per Bulley & Andrews, LLC Standard Policy |

Init.

/

AIA Document A111™ – 1997. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:42:23 on 11/21/2007 under Order No.1000279992_1 which expires on 1/17/2008, and is not for resale.
User Notes:                                                                                          (3562256118)

This Agreement is entered into as of the day and year first written above and is executed in at least three original copies, of which one is to be delivered to the Contractor, one to the Architect for use in the administration of the Contract, and the remainder to the Owner.

OWNER (Signature)                           CONTRACTOR (Signature)

                                              Paul R. Hellermann, President

Robert G. Shaw Manager              Bulley & Andrews, LLC
(Printed name and title)                         (Printed name and title)

Rm 223 — Shaw

Mary Conn—
745 E. Woodland Rd.
LF, IL 60045

Init.

AIA Document A111™ – 1997. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:48:23 on 11/21/2007 under Order No.1000079995_1 which expires on 1/17/2008, and is not for resale.
User Notes:                                    (3562258118)

12

708-763-9911
or  847-295-7511

This Subcontract Agreement, hereafter called "Subcontract", is made this **13** day of **June, 2007** by and between BULLEY & ANDREWS, LLC, an Illinois Corporation, hereafter called "General Contractor", and **J & L Management** hereafter called "Subcontractor", witnesseth: General Contractor and Subcontractor agree as follows:

## ARTICLE 1 – SCOPE OF WORK

1.1 **Scope of Work.** Subcontractor shall do and provide all things necessary for the proper performance, installation, construction and completion of all of the **Demoliton** hereafter called the "Work" to the satisfaction and acceptance of the General Contractor, Architect and **Barat Woods** hereafter called "Owner" including, but not limited to, providing and paying for all labor, materials, tools, plant, equipment, competent full-time supervision, services, insurance and bonds and under and in accordance with the General Contract dated **TBD** between Owner and General Contractor for the construction and completion of the **Barat Woods** hereafter called the "Project" and in accordance with all General Conditions, Supplementary General Conditions, Drawings, Specifications, Addenda, Amendments and Alternates hereafter collectively called "Contract Documents" which are listed in EXHIBIT "A" attached hereto and subject to Article 11 herein, and made a part of this Subcontract to the same extent as if entirely restated herein and as subsequently modified by written executed Amendments and Change Orders. Subcontractor shall cause that all of the provisions of this Subcontract including the Work and all of the provisions of the contract between Owner and General Contractor (the "General Contract") be specifically assumed by all sources of labor, trades and materials including all of Subcontractor's own forces, subcontractors, Sub-subcontractors, suppliers, independent contractors and all other entities at any tier lower than Subcontractor (hereafter collectively called "Sub-subcontractors") that have been used or will be used in connection with the performance or completion of any part of the Work.

## ARTICLE 2 – STANDARD OF CARE

2.1 **Standard of Care.** Subcontractor shall do all things necessary to perform the Work in the most expeditious and economical manner consistent with the best workmanship and sound business practices of "class A" subcontractors performing similar work and services for similar projects and consistent with the best interests of the Owner and General Contractor. Furthermore, Subcontractor shall do the Work in strict accordance with the Contract Documents and to the satisfaction of Owner, and Architect or Engineer for the Project, hereafter called "Architect", and General Contractor.

2.2 **Representations and Warranties.** Subcontractor warrants and represents that it has examined and understands the Contract Documents and is fully aware of all of the terms and provisions thereof. The Subcontractor represents and warrants the following to the General Contractor as a material inducement to the General Contractor to execute this Agreement, which representations and warranties shall survive the execution and delivery of this Agreement, any termination of this Agreement and the final completion of the Work;

    **2.2.1** the Subcontractor is financially solvent, able to pay all debts as they mature and possessed of sufficient working capital to complete the Work and perform all obligations hereunder;

    **2.2.2** the Subcontractor is able to furnish the plant, tools, materials, supplies, equipment and labor required to complete the Work and perform its obligations hereunder and has sufficient experience and competence to do so;

    **2.2.3** the Subcontractor is authorized to do business in the state and city where the Project is located and is properly licensed by all necessary governmental and public and quasi-public authorities having jurisdiction over the Subcontractor, the Work and the Project;

    **2.2.4** the Subcontractor's execution of this Agreement and performance thereof is within the Subcontractor's duly authorized powers; and

    **2.2.5** the Subcontractor's duly authorized representative has visited the project site and is familiar with the Project site conditions under which the Work is to be performed and has correlated observations with the requirements of the Contact Documents.

2

# EXHIBIT C

2.3    **Notice to Proceed.** Subcontractor shall begin the Work within five (5) days' written notice from General Contractor, and shall prosecute such Work diligently and in coordination and cooperation with other work on the Project, and shall at all times expedite the Work so as to permit the earliest completion of the Project.

2.4    **Taxes and Compensation.** The Subcontractor hereby assumes and agrees to pay (a) all sales, use and other taxes levied or imposed on account of the sale of all tangible personal property required by or used in the performance and execution of this Subcontract, (b) all taxes or charges levied or imposed, including, but not limited to taxes or charges imposed by any municipality, county, township, state, or the United States of America, (c) all compensation including all benefits and contributions paid by Subcontractor to individuals employed by it in the performance and execution of this Subcontract, (d) all Sub-subcontractors utilized for the performance of this Subcontract, and (e) any interest or penalties assessed or imposed in connection with such taxes, contributions and charges.

2.5    **The Work.** Subcontractor shall furnish and pay for all item specified in any Project Rider, or the Contract Documents and other items necessary for the Work without limitation, any other items or services required for the performance of this Subcontract including, but not limited to, materials, supplies, machinery, tools, insurance, equipment, offices, sheds, hoists, scaffolding, ladders, deckings, staging, runways, labor, supervision, services and telephone. The terms "labor and materials", "labor or materials", and "Work" are used, sometimes interchangeably, in this Subcontract to denote any or all of the items or services enumerated in this Paragraph 2.5 and are to be interpreted as having the broadest scope appropriate to each context in which they appear. If the Contract Documents expressly provide that any items or services necessary for the Work are to be furnished by other than Subcontractor or General Contractor, General Contractor shall use reasonable efforts to have same furnished, but shall not be responsible for any difficulty or delay in the furnishing thereof.

## ARTICLE 3 – SUBCONTRACTOR COMPENSATION

3.1    **Subcontractor Compensation.** Subject to additions and deductions made as provided hereafter, or by written modification to this Subcontract, General Contractor agrees to pay Subcontractor for the full and faithful performance of this Subcontract the Subcontract Price of **Eight Hundred, Fifty-Seven Thousand, Nine Hundred Dollars and 00/100 ($857,900.00).**

## ARTICLE 4 - PAYMENTS

4.1    **Application for Payment.** Within five (5) days following the last day of each month or such other day of the calendar month as may be designated by General Contractor in writing as the monthly cut-off date, Subcontractor shall submit to General Contractor, in the form required by General Contractor, a written Application for Payment (a) referencing the Bulley & Andrews, LLC job number; (b) showing the aggregate value of that portion of the Work performed and completed by Subcontractor through such cut-off date; and (c) deducting therefrom (i) a retainage reserve of **10%** of such aggregate value, (ii) all previous payments made and outstanding payment requests under prior Applications for Payment, (iii) the aggregate amount of all charges made by General Contractor for services, materials or equipment furnished by General Contractor and payments made by General Contractor to others on behalf of Subcontract and (iv) all other amounts which General Contractor is entitled to retain in accordance with the provisions of this Subcontract. Subcontractor shall submit with each Application for Payment sworn statements showing all Sub-subcontractors including, but not limited to, all sources of labor, trades and material including all of Subcontractor's own forces, Sub-subcontractors, suppliers, independent contractors and all other entities utilized for performance of this Subcontract and for each provide an executed waiver and release of all liens, claims and encumbrances and such other items as General Contractor may require to protect against or release mechanics' liens claims, claims on funds and encumbrances.

4.2    **Initial Application for Payment.** Prior to its first monthly Application for Payment, Subcontractor shall submit a detailed breakdown showing the subdivisions of the Subcontract Price into its various parts and including a list of names of all Sub-subcontractors, including, but not limited to, all sources of labor, trades and materials including all of Subcontractor's own forces, subcontractors, sub-subcontractors, suppliers, independent contractors and all other entities at any tier lower than Subcontractor, that have been used or will be used in connection with the performance or completion of any part of the Work. The form and content of this breakdown is to be subject to General Contractor's, Architect's and Owner's written approval and is to be used as a standard for evaluating Subcontractor's estimate of the aggregate value of its Work contained in its monthly Application for Payment.

4.3    **Payment of Subcontractor.** Applications for Payment, provided they are prepared and submitted in compliance with Article 4 shall be subject to the written approval of General Contractor, Architect and Owner. Payment of undisputed amounts based on the Application for Payment will be made to the Subcontractor within **ten (10)** days after such receipt of

corresponding payment from Owner, provided Subcontractor is then in full compliance with the terms of any Project Rider and/or the Contract Documents.

**4.3.1** If General Contractor receives corresponding payment from Owner, General Contractor may make any payment in whole or in part (a) only to Subcontractor or (b) to Subcontractor and Subcontractor's jointly or (c) direct to Sub-subcontractors, to be charged against the account of Subcontractor. If General Contractor does not receive corresponding payment from Owner for any reason including, without limitation, Owner's financial condition or lack of available funds, then Subcontractor shall not be entitled to payment from General Contractor despite General Contractor's approval of such Application for Payment, receipt of such corresponding payment from Owner being a condition precedent to any obligation of General Contractor to pay Subcontractor.

**4.3.2** If any claim or lien is made or filed with or against the Owner, the Project the Project site or the Project funds by any person claiming that the Subcontractor or any Sub-subcontractor or any person or entity employed or engaged by or through Subcontractor has failed to make payment in connection with the Work or if the General Contractor, in good faith, believes that such a claim or lien may be filed or brought, General Contractor shall have the right to (1) retain from any payment then due or thereafter to become due an amount which it deems sufficient to satisfy, discharge or defend against any such claim, lien or action and (2) demand that Subcontractor provide, within **ten (10)** days of General Contractor's request therefor, proof to the satisfaction of General Contractor that such non-payment, claim or lien has been fully satisfied, dismissed and discharged. General Contractor shall have the right to offset any payments owing to Subcontractor the costs and expenses incurred in association with the satisfying the claim or lien. Nothing in the Paragraph 4.3.2 limits the Subcontractor's obligation regarding indemnification against liens as provided for in paragraph 4.8.

**4.4** **Subcontractor's Payment of Costs Incurred.** In the event General Contractor has any concern that labor, material, or other obligations incurred in the performance of Subcontractor's Work are not paid, General Contractor shall give written notice of such concern to Subcontractor and may take any steps deemed necessary to insure that any progress payment shall be utilized to pay such obligations. If, upon receipt of said notice, Subcontractor does not: (a) supply evidence to the satisfaction of General Contractor that the moneys owing to the claimant have been paid; or (b) in the case where a mechanic's lien, claim or encumbrances is asserted, post bond releasing the lien, claim or encumbrance and indemnifying Owner, General Contractor, General Contractor's surety, if any, and the Project from such lien, claim or encumbrance, then General Contractor shall have the right to retain out of any payments due or to become due to Subcontractor a reasonable amount to protect Contractor from any and all loss, damage, or expense, including all attorneys' fees and costs, arising out of or relating to any such lien, claim or encumbrance until the lien, claim or encumbrance has been satisfied by Subcontractor or General Contractor may proceed with the provisions as outlined in Article 9.

**4.5** **Final Payment.** Final Payment of undisputed amounts shall become due to Subcontractor only after the following: (1) the Certificate of Final Acceptance has been issued by Architect; (2) the Work has been accepted in writing by General Contractor and Owner; (3) final payment for Subcontractor's Work is made by Owner to General Contractor; (4) all required final waivers and releases of liens, claims and encumbrances, sworn affidavits, guarantees, as-built drawings, warranties, operating manuals, and project manuals are submitted to General Contractor by Subcontractor; (5) all punch-list items, all Work and all obligations of Subcontractor under this Subcontract and the Contract Documents are completed; and (6) satisfactory evidence is given to General Contractor that all bills, claims, or other obligations of Subcontractor have been discharged in full. Final payment, at the General Contractor's option, may be made in the form of checks made jointly payable to the Subcontractor and any Sub-subcontractor entitled to payment out of the funds provided by the final payment, provided however, that no such check shall be payable to more than two payees or in an amount greater than the amount of payment claimed by the Sub-subcontractor payee and approved by the Subcontractor. The Subcontractor shall provide evidence satisfactory to the General Contractor establishing the identities of such persons and the amounts of the payments to which they are entitled. If there are any injuries, claims for injuries, or alleged injuries to persons or property unsettled when the Work herein provided for is finished, Final Payment to Subcontractor shall be deferred until such claims are adjusted or suitable special indemnity and release bonds acceptable to General Contractor are provided by Subcontractor to General Contractor.

**4.6** **Release.** By acceptance of Final Payment, Subcontractor shall be deemed to have released and forever discharged General Contractor, Architect and Owner, and their respective successors and assigns of and from all claims and demands of Subcontractor and anyone claiming by, through or under Subcontractor in any manner arising out of or in connection with this Subcontract or the performance of any Work incidental hereto: and any such acceptance shall be joined with Subcontractor's undertaking to indemnify, defend and hold harmless the Owner, Architect and General Contractor, and each of them, from any liability, loss or damage, including, but not limited to, all attorneys' fees and costs of defense arising out of such claims or

demands, including the costs of collection. The Subcontractor shall obtain the same waivers and releases upon payment to its Sub-subcontractors and all those claiming by, through or under Subcontractor.

4.7        All payments received by Subcontractor hereunder shall be held by Subcontractor as a trust fund for the payment of all labor and materials and all other obligations incurred by Subcontractor in connection with the performance of the Work and shall not be applied to any other purpose until such payments are made and such obligations are satisfied in full.

4.8        **Indemnities Against Liens.** The Subcontractor shall appear, indemnify, protect, defend with counsel approved by the General Contractor and Owner, which approval shall not be withheld unreasonably, and hold harmless the General Contractor, Owner, and lenders and their agents and employees, and each of them (hereafter called "Lien Indemnitees"), as its own cost and expense, from and against any and all loss, damage liability or expense, including costs and attorneys' fees, to which said Lien Indemnitees, or any of them, may be put or may incur by reason of or in connection with the assertion or filing of a mechanic's lien or stop notice arising out of or in connection with the performance of the Work.

## ARTICLE 5 – INDEMNIFICATION

5.1        **Indemnification.** To the fullest extent allowed by law, and in addition to all other indemnities provided at law, in equity, or in any Project Rider or the Contract Documents, Subcontractor assumes full responsibility and risk for and hereby indemnifies and shall hold harmless, protect and, at the option of the following respective persons, appear and defend (with counsel approved by the General Contractor) the Owner, Architect, Owner's Representative, General Contractor and lenders for the Project, their respective officers, agents, employees and their respective successors and assigns (hereafter collectively called the "Indemnitees") from and against all claims, including but not limited to, damages of any type, demands, lawsuits and other proceedings judgments, causes of action, liabilities, claims of lien, liens, civil or criminal penalties, losses, costs and expenses, including but not limited to, all attorneys' fees, court costs and costs of collection (hereafter called "Claim"), directly or indirectly arising out of or resulting from the Work or any portion thereof, performance of the Work or any portion thereof, or any act or omission associated therewith or related thereto, incidental to, or connected with the Work or this Subcontract; provided that any such Claim (a) is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property (other than the Work itself) including the loss of use resulting therefrom, (b) is caused in whole or in part by any negligent, wrongful or willful act or omission of Subcontractor, any Sub-subcontractor or anyone directly or indirectly employed by any of them, or anyone for whose acts any of them may be liable, regardless of whether such Claim is caused in part by any negligent or wrongful or willful act or omission of an Indemnitee, except for the Indemnitees' sole negligence or sole willful misconduct, or (c) is caused in whole or in part by the failure of Subcontractor or its Sub-subcontractors to comply with any of the terms or provision of the Project Riders and the Contract Documents, including but not limited to, alleged infringements of patens or trade secrets and alleged failures to prevent Project Intrusions and Damages as defined in Paragraphs 6.10 through 6.12, herein. In Claims against any of the Indemnitees by any employee of Subcontractor, any Sub-subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, the indemnification obligation under this Paragraph shall not be limited in any way by any insurance required herein or any limitation on the amount or type of damages, compensation or benefits payable by or for the benefit of Subcontractor or any Indemnitees under workers' compensation acts, occupational disease acts, disability benefits acts, or other employee benefit acts.   This indemnity shall survive the termination of any Project Riders, Subcontract, General Contract and final completion of the Work.

5.2        **Prompt Claims Process.** The Subcontractor shall upon receipt of notice of any Claim, promptly take all action necessary to make a claim under any applicable insurance policy or policies the Subcontractor is carrying and maintaining; however if the Subcontractor fails to take such action under any such insurance policy, the Subcontractor shall indemnify and save harmless the Indemnitees from any and all costs, charges, expenses and liabilities incurred by the Indemnitees in making any Claim on behalf of itself or the General Contractor under any insurance policy or policies required herein.

5.3        **Survival.** The provisions of this Paragraph shall survive the termination of the Subcontract, Project Riders and the General Contract and final completion of the Work.

5.5        **Severability.** If any portion of this Article 5 is found to be unenforceable, the remainder of the Article shall remain enforceable to the fullest extent possible to preserve the interest of the indemnity provisions.

## ARTICLE 6 – ON SITE OPERATIONS

6.1        **Cleanup.** Subcontractor will perform, as its sole expense, regular clean-up and prompt removal from the site of all debris and rubbish resulting from Work performed under this Subcontract notwithstanding any reference in the Contract

Documents requiring General Contractor to perform clean-up or rubbish removal. At all times Subcontractor shall keep the premises where the Work is performed and the adjoining premises, driveways and streets clean of rubbish caused by Subcontractor's operations and, at the completion of the Work, shall remove all rubbish and all of its tools, equipment, temporary work and surplus materials from the Project and shall leave the Project clean and ready for use. Wherever Subcontractor's Work includes or affects finished surfaces including but not limited to, all glass, painted or stained surfaces, tile flooring, finished metal work, hardware, fixtures, equipment and other finished surfaces, it shall remove all dirt, marks and stains and repair and replace all broken or unusable finished surfaces to the sole satisfaction of the General Contractor.

**6.2    Undertaking the Work.** Subcontractor shall furnish and install all inserts and anchors required for the proper securing, support and erection of the Work, and shall perform all layout Work and provide all scaffolding required to perform the Work under this Subcontract. Notwithstanding anything to the contrary in the Contract Documents, Subcontractor agrees to be and is fully responsible for all hoisting required for its Work and for the protection and condition of its material, Work or equipment installed or stored on the job site or elsewhere until final acceptance thereof by Owner, General Contractor and Architect and further agrees that General Contractor is not obligated to and may not carry any insurance for the benefit of Subcontractor. Any hoist, crane, power tool, truck, vehicle, scaffold, derrick or other apparatus or equipment ("Apparatus") installed or maintained on the job site by General Contractor or otherwise belonging to General Contractor may be used by Subcontractor and its Sub-subcontractors only in the manner and at the times specified by General Contractor, and Subcontractor shall pay for such use such reasonable amounts as may be determined by General Contractor. Whenever Subcontractor shall use any Apparatus, it shall do so at its own risk and shall satisfy itself as to the safety thereof and shall provide for its own insurance coverage for any resulting injuries to persons or property possibly resulting from use of any Apparatus.

**6.3    Limited Areas of Operations.** All operations of Subcontractor (including storage and disposal of materials and rights of passage) shall be confined to areas described or approved by General Contractor in writing.

**6.4    Temporary Buildings.** Temporary buildings (such as storage sheds, shops and offices) and temporary utilities, may be erected at the site by Subcontractor only with the advance written approval of General Contractor, and shall be built with labor and materials furnished by Subcontractor without expense to General Contractor or Owner. Such temporary buildings or utilities shall remain the property of Subcontractor and shall be removed by Subcontractor at Subcontractor's expense upon completion of the Work or when directed by General Contractor or Owner.

**6.5    Indemnification.** Without limiting the generality thereof, the indemnification provisions of Article 5 shall apply to any use under Paragraph 6.2 of Apparatus by Subcontractor, Sub-subcontractors or any person or entity directly or indirectly employed by any of them, or anyone for whose acts any of them may be liable and their officers, agents, employees and invitees.

**6.6    On Site Storage.** Only materials and equipment, which are to be used directly in the Work, shall be brought to and stored on the Project site. After equipment is no longer required for the Work, it shall be promptly removed from the project site. Protection of construction materials and equipment stored at the Project site from weather, theft, damage and all other adversity is solely the responsibility of the Subcontractor even if the Owner or General Contractor provides security services.

**6.7    Signage.** The Subcontractor and any entity for whom the Subcontractor is responsible shall not erect any sign on the Project site without the prior written consent of the General Contractor.

**6.8    Site Access.** The Subcontractor shall ensure that the Work, at all times, is performed in a manner that affords reasonable access, both vehicular and pedestrian, to the Project site and all adjacent areas to a degree that is consistent with the Project approvals. The Work shall be performed, to the fullest extent reasonably possible, in such a manner that public areas adjacent to the Project site shall be free from all debris, building materials and equipment likely to cause hazardous conditions. Without limitation of any other provision of the Subcontract, any Project Riders of the Contract Documents, the Subcontractor shall use its best efforts to minimize any interference with the occupancy or beneficial use of any existing structures or buildings in the event of occupancy.

**6.9    Timing and Costs of Tests and Inspections.** Tests, inspections and approvals of portions of the Work required by the Subcontract, any Project Riders, the Contract Documents or Legal Requirements shall be made at an appropriate time. Unless otherwise provided, the Subcontractor shall make arrangements for such tests, inspections and approvals with an independent testing laboratory or entity acceptable to the General Contractor, and shall bear related costs of tests, inspections and approvals. The Subcontractor shall give the General Contractor, Architect, Owner's Representative and Owner timely notice of when and where tests and inspection are to be made so that the General Contractor, Architect, Owner or the Owner's

Representative may be present for such procedures. If such procedures reveal failure of the portion of the Work to comply with requirements established by the Contract Documents, all costs made necessary by such failure including those of repeated procedures and compensation for the General Contractor's Architect's, Owner's or Owner's Representative's, if one has been appointed, services and expenses shall be at the Contractor's expense.

**6.10    Intrusions and Damages from Moisture and Soil; Warranty.** With respect to Subcontractor and its Sub-subcontractors performing their respective portions of the Work related to or arising out of any element of the Project that may allow any water, moisture, vapor, condensation or soil to enter, form in or cause any damage to the Project (collectively "Intrusions") including Intrusion damages caused by, but not limited to, mold, mildew, dry-rot, moisture-borne or soil-borne infestation, chemical deterioration, corrosion, significant cracking, significant vertical displacement, pollution or any other damage to the Project (collectively "Damages"), the Subcontractor and Sub-subcontractors guaranty and warrant that they will immediately Repair, as defined below, any Intrusions or Damages for the greater of two (2) years, the number of years specified by law or the number of years specified by the Contract Documents. This guarantee and warranty in no way limits any other statutes of limitations or causes of action for construction defects, or other claims against the Subcontractors or Sub-subcontractors.

**6.11    Moistureproofing Systems/Building Systems.** Subcontractor and Sub-subcontractors shall construct and install all necessary elements of the Work so as to create a moisture-protected and element-protected Project that prevents any Intrusions or Damages including, but not limited to constructing and installing all waterproofing and moisture barrier systems, internal moisture barrier systems, vapor barrier systems, foundation systems, drainage systems, slab or sub-floor systems, roof systems, roofing materials, gaskets, papers, felts, sheathing, sheetmetal elements, caulkings, gravelstops, weepscreens, drains, gutters, flashings, counter flashings, trims, assemblies, chimney caps, ventilation components, decks, deck systems, balconies, balcony systems, stairs, exterior stairs, grades, hardscape, irrigation systems, landscaping systems, systems preventing erosion and contract between the Project and any damaging water or soil, pot shelves, columns, planters, exterior horizontal surfaces, internal wall cavities, retaining walls, site walls, landscape and wall drainage systems, sewer systems, utility systems, shower and bath pans and enclosures, ceramic tile systems, dryer ducts, protective paints and stains, doors, windows, glazings, curtain walls, framings, store fronts, skylights, exterior sidings, wall structures, insulations, plumbing systems, electrical systems, heating/ventilation/air conditioning systems, fire sprinklers, life-safety systems, security systems, cable systems, penetrations through any elements of the Work by any other elements of the Work such as wires, pipes and conduits, and any other elements of the Project required to prevent water, moisture, vapors or condensation from entering, forming in or Damaging the Project (collectively "Moistureproofing Systems/Building Systems").

**6.12    Repair of any Intrusions and Damages; Testing.** If the Moistureproofing Systems/Building Systems allows any Intrusions of Damages, upon written notice from the Contractor or Owner, Subcontractor and its Sub-subcontractors shall make the necessary permanent Repairs, as further defined below, to immediately prevent further repair, mitigate, restore and remediate all Intrusions and Damages so as to establish all conditions necessary for the safe and healthy habitation of the Project by humans and animals (collectively "Repair") including, Repair of all Damages, Intrusion areas, Moistureproofing Systems/Building Systems, interiors including, but not limited to walls, ceilings, fixtures, furnishings, improvements, paintings, decorations, improvements, other portions of the Project and personal property of the Owner or its successors, assigns, lessees, occupants, or representatives Damaged by any such Intrusions (collectively "Interiors and Personal Property"). The Subcontractor and Sub-subcontractors shall be obligated to removed and replace any Work necessary to gain access to and Repair of the Moistureproofing Systems/Building Systems, Intrusion areas, Interior and Personal Property. Further, Subcontractor and Sub-subcontractors shall carry out all Repairs at their sole cost and expense in order to eliminate all Intrusions and Damages including, but not limited to, Damages to the Moistureproofing Systems/Building Systems, Intrusion to be conducted confirmatory air tests or other sampling and visual tests as evidence that all Damages caused by the Intrusions have been completely Repaired to the Owner's and Contractor's satisfaction.

## ARTICLE 7 - INSURANCE

**7.1    Obtain and Maintain Insurance.** Subcontractor and, unless otherwise specified in this Subcontract, each Sub-subcontractor shall obtain and maintain insurance with coverage limits as set forth in the Contract Documents and as directed by General Contractor in the attached EXHIBIT "B". All such insurance shall be carried in companies licensed to do business in the State of Illinois or the jurisdiction of the Project, and in possession of a rating by "Best" Rating Service of A-XII or better and shall name General Contractor, Owner, Architect, Owner's Representative and their employees and agents as additional insured parties. Subcontractor shall not commence the Work under this Subcontract until it has obtained all insurance required hereunder and true copies of Certificates of Insurance and the entire policies evidencing such insurance have been submitted to and approved in writing by General Contractor. Each Subcontractor and every Sub-subcontractor shall, to the extent available, maintain first-party and third-party insurance coverage that does not exclude coverage for

Intrusions and Damages, including mold as defined in Paragraph 6.10, above. Each policy shall provide that it will not be canceled or materially altered except after thirty (30) days' advance written notice to General Contractor, mailed to the address indicated herein, and the certificates of insurance shall so state. In any event, failure of Subcontractor or any of its Sub-subcontractors to deliver true copies of all Certificates of Insurance and the entire policies to General Contractor before Work commences shall not act as a waiver of this provision, but shall be a material breach of this Subcontract.

7.2     **Renewal Notice.** Upon renewal of any such insurance that expires before the termination of the Subcontractor's obligation to carry such insurance pursuant to this Agreement, the General Contractor shall be provided with renewal certificates or binders within **ten (10)** days prior to such expiration.

7.3     **General Contractor's or owner's Option to Insure.** General Contractor or Owner shall have the option, but not the obligation, in lieu of Subcontractor or any Sub-subcontractor, to obtain and maintain, for the benefit of one or more of Owner, General Contractor, Architect, Engineers, Owner's Representative, Subcontractor or Sub-subcontractors and their employees and agents, any of the policies of insurance required by this Subcontract or the Contract Documents. In such event, Subcontractor shall (1) pay the cost of such insurance obtained by General Contractor or Owner as is applicable to the Work of Subcontractor, (2) furnish all necessary information to permit General Contractor or Owner to obtain and maintain such insurance, and (3) permit General Contractor or Owner or General Contractor's or Owner's insurance carrier to audit Subcontractor's or Sub-subcontractor's records to ascertain the cost of such insurance properly chargeable to Subcontractor or Sub-subcontractor. If the Owner or the General Contractor is damaged by the failure of the Subcontractor to purchase or maintain insurance required under this Article 7, any Project Rider or the General Contract, then the Subcontractor shall bear all reasonable costs (including attorneys' fees and court and settlement expenses) properly attributable thereto.

7.4     **Waiver of Subrogation.** Subcontractor, on behalf of itself and all of its Sub-subcontractors, hereby waives all rights of action and subrogation against General Contractor, Owner and any lender for the Project,, and their officers, agents, and employees to the extent of any insurance recoveries that may be obtained by such waiving party including, but not limited to personal injury and property damages including damages to tools and equipment caused by fire and other perils covered by insurance, except such rights as it may have to proceeds of insurance held by any other person as trustee or otherwise on behalf of Subcontractor.

7.5     **Sub-subcontractor's Proof of Insurance.** Before permitting any Sub-subcontractor to perform any of the Work under the Subcontract, Subcontractor shall require such Sub-subcontractor to furnish true copies of certificates of insurance and insurance policies in mode and manner as required by Subcontractor in Paragraph 7.1 above. Subcontractor shall maintain and produce at a location reasonably convenient to General Contractor and Owner a file of such policies, which may be examined by General Contractor or Owner at any time.

7.6     **No Limitation of Liability.** Nothing in this Article 7, any Project Rider or the General Contract shall be interpreted to limit the liabilities of Subcontractor otherwise assumed under this Subcontract. Furthermore, the insurance specified herein or in any Project Rider shall be primary to any insurance or self-insurance program maintained by the General Contractor of Owner.

7.7     **Additional Insureds.** Subcontractor and all of its Sub-subcontractors shall have the following endorsement added to their Comprehensive General Liability policies: *"It is hereby agreed that the General Contractor, Owner, Architect, Owner's Representative and their employees and agents are hereby named as additional insureds."*

7.8     **Prompt Reporting.** The Subcontractor shall immediately report to General Contractor and applicable insurance carrier, and promptly thereafter confirm in writing, the occurrence of any injury, loss or damage incurred by the Subcontractor or its Sub-subcontractors, or the Subcontractor's receipt of notice or knowledge of any claim by a third party or any occurrence that might give rise to such a claim. Upon completion of the Work, the Subcontractor shall submit to the General Contractor a written summary of all such injuries, losses, damage, notice or third party claims and occurrences that might give rise to such claims.

7.9     **Duty to Comply with Policies.** It shall be the responsibility of the Subcontractor not to violate nor knowingly permit to be violated any condition of the policies required under this Subcontract and it shall be the Subcontractor's duty and responsibility to impose upon each Sub-subcontractor employed by the Subcontractor to perform any of the Work described in this Subcontract or any Project Rider the same responsibilities and obligations imposed upon the Subcontractor under this Article 7.

## ARTICLE 8 - TERMINATION

**8.1    General Contractor's Termination Without Cause.**  General Contractor may terminate and cancel this entire Subcontract, or only the portion of the Subcontract encompassing and evidenced by one or more Project Riders, at any time, with or without cause or Notice, and in such event Subcontractor and its Sub-subcontractors shall immediately cease performing the Work that is the subject of the termination.

**8.2    Default.**  If Subcontractor shall be in default, the provisions of Article 9 shall apply.

**8.3    Compensation Upon Termination.**  If Subcontractor shall not be in default, then subject to the provisions of Article 4, on such termination General Contractor may be liable to Subcontractor for no more than the costs of the Work performed to the date of termination, less, disputed amounts, previous payments, proper charges and credits plus a fee, but limited by the aggregate value of the portion of the Work completed to the date of termination and limited by the total Subcontract price to be paid to the Subcontractor for the Work of the Subcontract or Project Rider that is terminated.  The costs and fees to be paid upon termination are defined as follows:

      **8.3.1**    Subject to sub-Article 8.5, the actual costs of all materials for which orders have been placed by Subcontractor for proper use under this Subcontract, it being agreed that, if required by General Contractor, Subcontractor shall make every possible effort to cancel such orders;

      **8.3.2**    Subject to sub-Article 8.5, the actual cost of materials called for hereunder, fabricated and in Subcontractor's shop, or in transit;

      **8.3.3**    The actual cost of labor performed and materials installed on the Project; provided, however, that the foregoing are in accordance with the terms of the Contract Documents;

      **8.3.4**    Federal and State taxes, and direct union benefits payments applicable to the items mentioned above in sub-Article 8.3.1, 8.3.2, and 8.3.3, should General Contractor decide, at its sole option, to pay such amounts;

      **8.3.5**    Premiums for insurance required to be furnished and paid for by Subcontractor under Article 7 hereof and the applicable Project Rider to the date of termination as apportioned to this Subcontract; and

      **8.3.6**    In addition, a sum equal to 10% of the costs of the Work performed to the date of termination of this Subcontract in lieu of all overhead and profits,

In no event shall the amount so determined be greater than an amount equal to the aggregate value of the portion of the Work completed to the date of termination.

**8.4    Continuing Liability for Work.**  In the event of any termination under this Article 8, Subcontractor shall not be released from responsibility for any Work performed through the date of termination, nor from any liability that may arise by reason of any event that may occur through said date.

**8.5    General Contractor's Options Upon Termination.**  In the event of termination of this Subcontract, with or without cause, General Contractor shall have the option of: (a) taking over all materials ordered, manufactured or delivered but not installed, and all materials on order or under Subcontract or Sub-subcontract, provided same are free from all liens or claims, upon payment to Subcontractor of the amount actually expended for or on account of such materials plus a percentage of such amount, such percentage being the same percentage as set forth in sub-Article 8.3.6 above, in which event Subcontractor shall execute all proper transfer documents and otherwise cooperate with the transfer; or (b) directing Subcontractor to dispose of same for the account of General Contractor; Subcontractor shall, however, first submit to General Contractor the offers Subcontractor has received for such materials, and shall not dispose of said materials at the prices offered unless so directed by General Contractor.  Furthermore, in order that the interests of General Contractor may be properly protected, Subcontractor shall fully insure such materials as may be involved hereunder with insurance in favor of General Contractor against casualty or theft, and shall furnish General Contractor with copies of such insurance policies.

**8.6    Work Stoppage.**  Contractor may, by written order, direct Subcontractor to stop suspend, or delay all or any part of the Work indefinitely or for such period of time as may be determined by General Contractor to be necessary or desirable for the convenience of General Contractor )hereafter called "Work Stoppage"). If such Work stoppage unreasonably delays the progress of the Work and causes additional expense or loss to Subcontractor in the performance of the Work not due in part to

the fault or negligence of Subcontractor, an equitable adjustment in the Subcontract Price and time for performance shall be made in accordance with the agreement of the parties or by application of Article 22 and the Subcontract shall be modified in writing accordingly; provided, however, that (a) no adjustment will be made hereunder for Work Stoppage properly or reasonably ordered because of Subcontractor's breach of or failure to comply with any provision of this Subcontract or under any provision of the Contract Documents, (b) no claim may be asserted by Subcontractor for an adjustment hereunder unless Subcontractor notifies General Contractor in writing of such claim within seven days of Subcontractor's receipt of the written order of Work Stoppage, and (c) no claim may be asserted for any expense or loss occurring after termination of this Subcontract.

### ARTICLE 9 - DEFAULT

**9.1     Events Constituting Default.** Any one or more of the following shall be an event of default hereunder: (1) Subcontractor refuses or fails to supply a sufficient number of properly skilled work forces or the specified materials or proper quality or otherwise fails to prosecute the Work, or any separable part thereof, with such diligence as will ensure its completion in the manner and within the time specified in this Subcontract and Contract Documents, or any extensions thereof, or fails to meet any interim deadlines, or fails to complete the Work within such time; (2) Subcontractor fails to make payment on time for its Sub-subcontractors; (3) Subcontractor disregards laws, ordinances, rules, building codes and regulations, or orders of any public authority having jurisdiction over the project or Work; (4) Subcontractor becomes insolvent or fails to pay its obligations as they become due or institutes or suffers to be instituted any voluntary or involuntary proceeding in bankruptcy or insolvency, or commits any act of bankruptcy; (5) in any manner violates any condition or obligation of this Subcontract; (6) knowingly breaches any warranty made by the Subcontractor under or pursuant to the Subcontract, any Project Rider or the Contract Documents; (7) fails to furnish the General Contractor with assurances satisfactory to the General Contractor evidencing the Subcontractor's ability to complete the Work in compliance with all the requirements of the Subcontract, any Project Rider or the Contract Documents; or (8) fails after commencement of the work to proceed continuously with the construction and completion of the Work for more than **ten (10)** days for reasons other than force majeure, strikes, or weather except as permitted under the Subcontract, any Project Rider or the Contract Documents.

**9.2     General Contractor's Options Upon Default.** If any event of default occurs but is not cured within **seventy-two (72)** hours of written notice thereof to Subcontractor, General Contractor may, at its election, at any time thereafter terminate Subcontractor's right to proceed with the Work or may take over and perform a portion of the Work. In such event, General Contractor may take over the Work and prosecute the same to completion by subcontract or otherwise, and Subcontractor and its sureties shall be liable to General Contractor for any excess cost occasioned General Contractor thereby, and for liquidated damages for delay, as fixed in the Subcontract, until such reasonable time as may be required for the final completion of the Work, or if liquidated damages are not so fixed, any actual damages occasioned by such default, including reasonable allocated overhead expenses and profit of the completing subcontractor or General Contractor. Additionally, General Contractor may, at its sole option, (1) accept assignment of the contracts with Sub-subcontractors or material suppliers, or (2) may take possession of and utilize, in completing the Work, all or part of the Subcontractor's facilities including but not limited to such materials, tools, appliances, and plant as may be on the site of the Work and necessary for the Work. Actual damages incurred by any default shall include all of Generals Contractor's attorneys' fees and costs arising out of or related to the Work, including the cost of collection.

**9.3     No Waiver of Rights.** If an event of default occurs but General Contractor does not terminate the right of Subcontractor to proceed, as provided in Paragraph 9.2 hereof, such shall not be deemed a waiver of General Contractor's ongoing right to terminate Subcontractor and Subcontractor shall continue the Work. In such case Subcontractor and Subcontractor's sureties shall be liable to General Contractor for such damages as may be caused by Subcontractor's default, including but not limited to, actual damages or for damages in the amount set forth in the Contract Documents for fixed, agreed, and liquidated damages occasioned by the default including, but not limited to, delay damages, and all General Contractor's incurred attorneys' fees and costs, including the cost of collection.

**9.4     Not an Election of Remedies.** The default and termination of this Subcontract or any other action by General Contractor or Owner shall not be deemed an election of remedies in the event of Subcontractor's default, it being the intention of the parties that all remedies set forth herein or provided by law shall be deemed cumulative.

**9.5     Compensation Upon Default.** In the event of default and termination, Subcontract shall not be entitled to receive any further payment under this Subcontract until the entire Project shall be wholly completed and payment has been made to General Contractor by Owner. At that time, if the unpaid Subcontract balances and amounts withheld hereunder as to any Project exceed the expense incurred by General Contractor in completing the Work, General Contractor shall pay such excess amount to Subcontractor minus any damages, attorneys' fees and costs as provided herein. However, General Contractor

shall be authorized to establish an adequate reserve to protect General Contractor and Owner during the period of warranty or guarantee required of Subcontractor which reserve shall be reasonably determined by General Contractor based upon the nature of the Work and the exposure under the warranty or guarantee. If the expense of completion shall exceed the unpaid balance, including any amounts withheld from Subcontractor hereunder, Subcontractor hereby agrees to pay the amount of such excess to General Contractor on demand by General Contractor. Nothing in this Article shall be construed as limiting the remedies of General Contractor to the provisions of this Paragraph, and failure of General Contractor to avail itself of its rights under this Article shall not operate as a waiver of any rights under this Subcontract or any Project Riders.

## ARTICLE 10 – CHANGES IN THE WORK

**10.1    Changes to the Work.** At any time during the life of this Subcontract, Subcontractor shall make any changes or substitutions in the Work and omit such portion of the Work as General Contractor may require (hereafter collectively called "changes"). No changes shall be made except upon a written Change Order from General Contractor, signed by a properly authorized officer or agent on behalf of General Contractor and stating the amount to be added to or deducted from ("the adjustment to") the Subcontract Price.

**10.2    Compensation for Changes to the Work.** To the extent, if any, that (i) a particular change provides for an addition to the Work not involving unit prices set forth in the Contract Documents, and (ii) General Contractor and Subcontractor cannot reach agreement as to the amount to be added to the Subcontract Price, the following shall apply:

    **10.2.1**    An amount will be added to the Subcontract Price equal to all Direct Costs as defined below incurred by Subcontractor or Sub-subcontractor directly performing the subject changes in doing the additional work plus 10% of Labor (excluding the premium portion of overtime) and 10% of Materials, both as defined below.

    **10.2.2**    The term "Direct Cost" shall include:

        **(a)**    Labor - all payroll charges for field employees and field supervision required because of the additional work, together with all general liability insurance, unemployment taxes, workers' compensation, Social Security, pension and welfare allowances, or other regular payroll charges on same as approved in writing by General Contractor;

        **(b)**    Materials - the cost of all materials and supplies, inclusive of applicable sales and use taxes, required because of the additional work to be incorporated in the Work, or required because of additional work to be used;

        **(c)**    Equipment - rental cost of all equipment required to be used because of additional work shall be at rates to be determined at 75% of the rates listed in the current edition of the "AED Green Book" (published by Primedia Information, Inc.) together with the cost of fuel where required and supply charges on same: and

        **(d)**    Other - any other direct costs incurred by Subcontractor as a direct result of performing the additional work.

**10.3    Cost Breakdown.** A breakdown of the cost of the additional work performed each day shall be submitted by Subcontractor to General Contractor in a form satisfactory to General Contractor on the succeeding day.

**10.4    Final Cost Decision.** To the extent the adjustment to the Subcontract Price cannot be determined under Paragraph 10.2, it shall be determined by Architect or Owner, whose decision shall be final.

**10.5    Proceed with Work.** In the event General Contractor and Subcontractor fail to agree as to the amount to be paid or allowed for such extra work or change, at General Contractor's election, and in its sole discretion, Subcontractor shall proceed with the Work regardless of any delay in determining the adjustment to the Subcontract Price.

**10.6    Limitation on Compensation.** Subcontractor shall in no event be entitled to, nor shall it receive any compensation or allowance for any Change Order in an amount greater than that which General Contractor actually receives from Owner, less a reasonable deduction for work performed by General Contractor or others, as well as for General Contractor's or others' overhead and profit. The issuance of any Change Order and payment thereof, prior to completion and acceptance of the Project, shall not preclude General Contractor from questioning the validity thereof and recouping payment where, on final settlement, it appears that the Change Order work was neither extra nor additional work under a proper interpretation of

this Subcontract or the General Contract. Change Orders become null and void if the Work is found to fall within the scope of the Subcontract or rendered necessary by the fault of Subcontractor.

10.7     **Bonds.** If Subcontractor has provided a Performance Bond and a Labor and Material Payment Bond as described in Article 19, Subcontractor shall notify Subcontractor's surety of the adjustment to the Subcontract Price. Evidence of such notification and acknowledgment of surety shall be immediately forwarded to General Contractor at the time a Change Order is approved in writing by General Contractor.

10.8     **Minor Changes in the Work.** The General Contractor will have authority to order minor changes in the Work not involving adjustment in the Subcontract Price or extension of the time and not inconsistent with the intent of the Contract Documents. Such change shall be effected by written order. The Subcontractor shall carry out such written orders promptly.

### ARTICLE 11 – CORRECTION OF THE WORK

11.1     **Attachments.** Certain sections of the Specifications and Addenda have been attached hereto for the convenience of Subcontractor. It is agreed, however, that Subcontractor's obligations are not limited to the attached sections, but include any other Work required to be performed by this Subcontractor. The Work may be detailed in among other documents referenced herein the drawings, Specifications, Addenda, Amendments, Alternates, Contract or Project Riders. Because of the large number of pages involved, the other sections of the Specification and Addenda have not been attached hereto but are available for examination by Subcontractor at the main office and field offices of General Contractor.

11.2     **Correction and Protection of Work.** Subcontractor shall furnish such good, proper, and sufficient materials, workmanship and labor of all kinds whatsoever, as shall be suitable for the timely finishing and completing of the Work. The Subcontractor shall take necessary precautions to properly protect the Work and the work of others from damage caused by the elements or Subcontractor's operations and will promptly, and at Subcontractor's expense, uncover and remove all improper materials and improper Work when so directed by General Contractor or Architect and substitute therefor such materials and Work as, in the opinion of Architect, are required by the drawings and specifications or by Owner. Subcontractor shall be responsible for damage to new or existing work caused by the execution of the Work and shall repair or replace such damaged work to the satisfaction of General Contractor and Owner, or General Contractor may so remedy and deduct the cost thereof from any amount due or to become due to Subcontractor.

11.3     **Right to Correct Work.** Neither the final certificate, nor final payment, nor any provision in the Contract Documents shall relieve Subcontractor of responsibility for faulty materials, workmanship or construction defects. Subcontractor shall promptly remedy any defects due thereto and pay for any damage to other work resulting therefrom. If Subcontractor fails upon reasonable notice to replace defective materials or workmanship or perform any labor required hereunder within a reasonable time or within the time established by the General Contractor, then General Contractor, Owner or others may furnish such materials or labor as are necessary to bring the Work up to the standard called for in the Contract Documents, and Subcontractor agrees to pay General Contractor or Owner promptly the sum expended to replace the defective Work.

11.4     **Right to Correct Work After Project Completion.** Should any imperfect workmanship or material or other faults appear after the completion of said Project, and which in the judgment of General Contractor, Architect or Owner, arise out of improper materials or workmanship, Subcontractor shall amend and make good any such faults and any resulting damage to the work of others at Subcontractor's own expense. In case of Subcontractor's failure to do so, General Contractor or Owner may have Work corrected and offset or otherwise recover from Subcontractor the entire cost thereof including all costs of inspection, testing, attorneys' fees and costs, including costs of collection.

11.5     **Limitation Period.** Nothing contained in this Article 11 shall be construed to establish a period of limitation with respect to other obligations which the Subcontractor might have under the Subcontract, any Project Riders or the Contract Documents.

11.6     **Acceptance of Nonconforming Work.** If the General Contractor elects to accept Work which is not in accordance with the requirements of the Subcontract, any Project Riders, or the Contract Documents instead of requiring its removal and correction, the Subcontract Price will be reduced as appropriate and equitable. Such adjustment shall be effected whether or not final payment has been made.

## ARTICLE 12 - ASSIGNMENT

**12.1**    Neither this Subcontract, nor any interest herein nor claim hereunder shall be assigned or transferred by Subcontractor except as expressly authorized in writing by General Contractor, and any attempt by Subcontractor to do so shall constitute a material breach of this Subcontract.  General Contractor may, without the consent of the Subcontractor, assign this Subcontract or any rights hereunder.

**12.2**    Subject to the provisions of Paragraph 12.1 above, this Subcontract shall be binding upon and inure to the benefit of the parties hereto, their respective successors, representatives and assigns.

## ARTICLE 13 – COMPLIANCE WITH LEGAL REQUIREMENTS

**13.1    Compliance with Legal Requirements.**  Subcontractor shall comply with all codes, rules, ordinances, statutes, regulations, interpretations of same by applicable agencies and Owner and General Contractor provided rules, policies or regulations (hereafter the "Legal Requirements") to the extent that they apply to the Work or materials supplied hereunder and with all requirements of any building department having jurisdiction over the Work, materials, workmanship or labor.

**13.2    Fees.**  Subcontractor shall procure and pay for all necessary licenses, fees and permits, permanent or temporary, affecting all or any part of the Work hereunder notwithstanding any contrary provisions in the General Contract or the Contract Documents.  Subcontractor shall also give the proper authorities all requisite notices relating to the Work, and defend, indemnify and hold General Contractor, Architect, and Owner, and each of them, harmless from all annoyance, delays, or fines having reference to the Work hereunder.

**13.3    Inspection.** Subcontractor shall, and acknowledges that it has, inspect the site and become fully acquainted with all conditions pertaining to the Work hereunder prior to signing this Subcontract including, but not limited to, all consultant reports, Contract Documents and contract pertaining to the Work and the Project.  Executions of this Subcontract by Subcontractor shall constitute an acceptance by Subcontractor of the conditions of the site and the job conditions pertaining to the Work hereunder.

## ARTICLE 14 – SAFETY PROCEDURES

**14.1    Compliance with Safety Procedures.**  Subcontractor shall, at its own expense, conform to the basic safety policy of General Contractor, and comply with all specific safety requirement promulgated by any governmental authority, including without limitations, the requirements of the current Occupational Safety and Health Act and the current Construction Safety Act and all standards and regulations which have been or shall be promulgated by the parties or agencies which administer such Acts.  Subcontractor shall have and exercise full responsibility for compliance hereunder by its agents, employees, suppliers and Sub-subcontractors generally, and in particular, with respect to its portion of the Work on this Project, shall itself comply with such requirements, standards and regulations, and require and be directly responsible for compliance therewith on the part of its agents, employees, suppliers and Sub-subcontractors; and shall directly receive, respond to, defend, indemnify and hold General Contractor, Owner and Architect harmless from and be responsible for all citations, assessments, fines or penalties which may be incurred by reason of Subcontractor's failure or failure on the part of its agents, employees, suppliers or Sub-subcontractors to so comply.

**14.2    Failure to Comply with Safety Procedures.**  If upon direction by General Contractor, Subcontractor fails to provide safety items described in Paragraph 14.1, General Contractor may provide such items and hold Subcontractor responsible for all costs relating to such items or suspend or terminate the Work in whole or in part.

**14.3    Dismissal of Employees.**  If Subcontractor shall disregard or fail to comply with General Contractor's "Basic Safety Policy", as outlined in (a) General Contractor's Safety Policy Manual, a CD is enclosed which contains a copy of the Safety Manual, and (b) weekly job site "Tool Box" meetings, General Contractor may direct the Subcontractor to dismiss from the site temporarily or permanently the Subcontractor's employee or employees who violated General Contractor's "Basic Safety Policy" or Legal Requirement.  As necessary, Subcontractor shall notify trade union or unions of such dismissal and reasons for the same.  Such Subcontractor's employee or employees shall not be allowed back on the job site until all safety policies are agreed to and will be obeyed.  Any costs incurred by General Contractor or Subcontractor due to such dismissal shall be solely borne by Subcontractor.

**14.4    Site Decorum.**  The Subcontractor shall control the conduct of its employees while on the Project site so as to prevent unwanted interaction initiated by the Subcontractor's employees towards the occupants of and visitor to the Project

site (the "Occupants") and any other individuals not associated with the Project. In the event the Subcontractor's employees initiate unwanted interaction, use profanity, illegal drugs or alcohol, the Subcontractor shall either upon the request of the General Contractor or at its own initiative, replace such employee with others of equivalent technical skill at no additional cost to the General Contractor. Furthermore, the following shall not be allowed on the Project site: (I) radios, other than two-way communication type; (ii) smoking; (iii) weapons of any kind; and (iv) eating in areas not designated for eating. Additionally, Subcontractor shall ensure that its employees, Sub-subcontractors and suppliers comply with reasonable instructions, policies, and procedures applicable to the Work.

**14.5    Hazard Communication Standard.** Subcontractor shall comply with and specifically cause its Sub-subcontractors to comply with each and every aspect of the U.S. Department of Labor's Occupational, Safety and Health Administration (OSHA) Hazard Communication Standard ("HazCom"), which requires all contractors and subcontractors to adopt a written hazard communication program and to educate their employees about the hazardous chemicals that they are exposed to in the workplace and the methods necessary to protect themselves. Subcontractor acknowledges that the term "hazardous chemical" applies to such standard construction site items as paint, concrete and wood dust. Subcontractor agrees to comply with all the terms and provisions of HazCom. In order to assist General Contractor in complying with the provisions of HazCom, Subcontractor shall deliver to General Contractor the following information (the "HazCom Information"): (1) the location where Subcontractor's Material Safety Data Sheets are kept; (2) the name and location of the hazardous chemicals to which employees of the Project site may be exposed; and (3) information regarding any precautionary measures needed to protect employees at the Project site and foreseeable emergency situations, and Subcontractor's labeling system used at the Project site. General Contractor has requested that other subcontractors at the Project site also submit HazCom Information to General Contractor and General Contractor agrees upon request to make such HazCom Information as submitted available to Subcontractor and Subcontractor's employees. Subcontractor acknowledges that the obligation of Subcontractor to provide HazCom Information is a continuing obligation and that every time a product with a new type of hazard is introduced at the Project site or a product's chemical makeup is changed or for any reason the HazCom Information becomes outdated, inaccurate or incomplete, Subcontractor shall immediately deliver to General Contractor, in writing, such additional HazCom Information as is necessary to make the HazCom Information delivered to General Contractor by Subcontractor complete and accurate in all respects. Subcontractor further acknowledges and agrees that unless and until Subcontractor delivers to General Contractor the HazCom Information, General Contractor shall have the absolute right to withhold payment of any sums otherwise due Subcontractor hereunder until such time as Subcontractor delivers all HazCom Information to General Contractor, and no such withholding or refusal by General Contractor to pay any sums due hereunder as a result of Subcontractor's failure to deliver to General Contractor the HazCom Information shall in any way affect Subcontractor's obligations under Subcontract or permit Subcontractor to cease or delay performance. In addition, General Contractor shall be entitled to withhold payment of any sum otherwise due Subcontractor at any time General Contractor reasonably believes that Subcontractor has failed to comply with the terms and provisions of this Paragraph, and General Contractor may continue such withholding until such time as Subcontractor has corrected such failure. General Contractor has found the publication entitled Hazard Communication: An Interim Guide for the Construction Industry published by and available from American Subcontractors Association, Inc., 1004 Duke Street, Alexandria, Virginia 33314, to be helpful in connection with the HazCom requirements. However, Subcontractor is solely responsible for complying with, and determining how to comply with the provisions of HazCom. Subcontractor shall likewise require HazCom compliance from its Sub-subcontractors as outlined in this Paragraph and Subcontractor shall provide all information provided by its Sub-subcontractors in compliance with HazCom to General Contractor.

**ARTICLE 15 - DRAWINGS**

**15.1    Drawings and Sequencing of Work.** Subcontractor shall provide sufficient, safe and proper facilities for the inspection of the Work, take necessary field measurements, secure acceptance of necessary samples, furnish shop drawings, setting plans and working diagrams when called for and in quantities required by Architect or General Contractor, and shall obtain Architect's approval on same without cost to General Contractor or to Architect. The approval of such drawings by the Architect will be general and will not mean that they have been checked for measurements or figures, and will in no way relieve Subcontractor from the responsibility for the correction of figures, or for taking the necessary measurements at the Project, or of proper fittings and construction of the Work, or from the necessity of furnishing material or labor required by the Contract Documents which may not be indicated on the shop drawings when approved, all of the foregoing as may be required to make the Work included in this Subcontract a complete and workable installation of its kind usable and satisfactory to General Contractor and Owner for the purpose intended. Subcontractor shall perform the Work in such sequence and at such rate of progress as, in the sole judgment of General Contractor, is necessary to achieve the earliest possible completion of the entire Project with emphasis on those portions of the Project which General Contractor deems most urgent.

15.2    **Shop Drawings.**

15.2.1   Subcontractor's attention is directed to the applicable portions of the Contract Documents which describe the required procedure for submittals of shop drawings, samples, and cuts.  Subcontractor shall immediately expedite preparation and submittal of all shop drawings, samples and cuts so as to permit adequate time for review and, if necessary, re-submittal, in order to avoid any delay to contraction progress due to late or untimely submittals.

15.2.2   **Time for Submittal.**  Where shop drawings are required for (a) fabrication of Subcontractor-furnished equipment or appliances, (b) installing Subcontractor-furnished material, equipment or appliances, or (c) planning and performance of the Work, such shop drawings shall be in compliance with the Contract Documents and shall be submitted by and at the expense of the Subcontractor at least **thirty (30)** days before fabrication, installation or performance is commenced, allowing for review by the General Contractor or Architect unless otherwise shown on the Project schedule.   The Subcontractor's submittal of shop drawings shall be sequenced and scheduled so as to prevent delays in the Work or the activities of the other contractors.  All shop drawings submitted for this purpose, which are reviewed and approved by the Architect, shall forma part of this Subcontract.  Such shop drawings shall include, but are not limited to, erection diagrams and other details, such as field connections for proper installation, erection of the equipment, appliances and performance of the Work.  Submittals which are not marked as reviewed for compliance with the Contract Documents and are not approved by the Subcontractor may be returned by the Architect without action.

15.3    **Action When Shop Drawing Rejected.**  The Subcontractor shall not proceed with any Work set forth in a shop drawing that is rejected by the Architect.

15.4    **Representation.**  By reviewing, approving and submitting shop drawings, product data, samples and similar submittals, the Subcontractor represents that the Subcontractor has determined and verified materials, field measurements and field construction criteria related thereto, or will do so, and has checked and coordinated the information contained within such submittals with the requirements of the Work and of the Contract Documents.

15.5    **Approval.**  The Subcontractor shall perform no portion of the Work for which the Subcontract, any Project Riders, or the Contract Documents require submittal and review of shop drawings, product data, samples or similar submittals until the respective submittal has been approved by the Architect.

15.6    **Liability.**  The Work shall be in accordance with approved submittals except that the Subcontractor shall not be relieved of responsibility for deviations from requirements of the Subcontract, any Project Riders or the Contract Documents by the Architect's approval of shop drawings, product data, samples or similar submittals unless the Subcontractor has specifically informed the Architect in writing of such deviation at the time of submittal and (1) the Architect has given written approval to the specific deviation as a minor change in the Work, or (2) a written change order has been issued authorizing the deviation.  The Subcontractor shall not be relieved of responsibility for errors or omissions in shop drawings, product data, samples or similar submittals by the Architect's approval thereof.

15.7    **Examination of Drawings.**  General Contractor does not guaranty the accuracy of any drawings or specifications forming part of this Subcontract as they relate to existing structures and equipment is not guaranteed by General Contractor.  Subcontractor shall make any necessary field measurements and shall check all elevations and connections at the site before ordering materials or proceeding with fabrication and construction.  In order to avoid complexity and to make the shop drawings more easily understood, the Work to be done may not be shown in any one plan, section or elevation.  The Subcontractor shall examine all drawings independently so that no omission will occur.  The shop drawings will be subject to such interpretations as General Contractor may find advisable to improve the general construction, to coordinate and avoid obstructions and interferences and better to adapt the arrangement of the various parts to the objects to be obtained.  Where a shop drawing shows only a portion of the Work, and the remainder is indicated as a continuation or repetition through the use of outline or other suggestion, the portion of the Work so drawn shall be understood as applying to other like portions of the structure even though they are shown only by outline or other suggestion.

## ARTICLE 16 - COOPERATION

16.1    **Cooperation and Coordination.**  Subcontractor agrees to cooperate and coordinate with General Contractor and other subcontractors with those whose work that of Subcontractor may come in contact in order to avoid complications, delay to the progress of the Work of Subcontractor or others, and to insure first-class workmanship in every respect.  In the manufacturing, assembling, erection, installation, and application of the Work, Subcontractor shall employ only persons whose work will be acceptable to and in harmony with other workers on the Project.  Subcontractor shall at all times during

progress of the Work employ a full-time field superintendent on site, acceptable to General Contractor, who shall supervise and coordinate the Work and act as Subcontractor's agent and representative in order to expedite the Work and insure the highest quality of workmanship.

## ARTICLE 17 – WORK COMPLETION AND DELAYS

**17.1    Time is of the Essence.**  Time is of the essence of this Subcontract. Subcontractor shall perform and complete the several portions and the whole of the Work as directed by General Contractor and in such manner as not to delay the work of any other person or the completion of the Project; provided, however, that in all events the Work shall be prepared and completed within such time limitations as may be set forth in the Contract between General Contractor and Owner and the Contract Documents.  If any time requirement hereunder shall be considered unreasonable, Subcontractor shall so notify General Contractor in writing within two working days after receipt of the General Contractor's order specifying such time requirement.  In the absence of such written objection, the order of General Contractor shall become a binding obligation on Subcontractor hereunder.  If the progress of the Work or the Project or any part thereof is delayed due to any act or failure to act of Subcontractor, Sub-subcontractors, or any of their officers, agents, or employees, then, without limiting General Contractor's remedies hereunder, Subcontractor shall do, at its own expense, whatever is necessary to minimize the impact of such delay including, without limitation, working overtime, increasing its forces, or providing additional equipment.

**17.2    Savings.**  The Subcontract Price as determined pursuant to Article 3 is a firm price, and any increase in the cost of labor, equipment or material during the performance of the Work shall be borne by Subcontractor.  Likewise, any savings in such cost shall inure solely to Subcontractor's benefit.

**17.3    Delays.**  Subcontractor acknowledges that, for an infinite number of reasons, the Project may not be completed within the time presently contemplated in the Contract Documents and that, because of such delays, Subcontractor may incur substantial additional expenses, costs and liabilities in the performance of the Work.  In the event that, for any reason, including but not limited to delays caused by General Contractor, Owner or Architect, the Project cannot be completed by the scheduled completion date and Subcontractor is required to perform the Work beyond the anticipated time because of delay in progress, Subcontractor agrees, as an inducement to General Contractor, to enter into this Subcontract that neither General Contractor, Owner nor Architect shall be liable for any increase in cost of wages, material, services or any other costs and damages incurred by Subcontractor during such period of delay, and Subcontractor further agrees to and hereby does waive any and all rights, claims and causes of action which it may have against General Contractor, Owner or Architect because of such costs and damages.

**17.4    Schedule.**  General Contractor has prepared or may prepare a progress schedule in reference to Work under the General Contract.  General Contractor does not represent or warrant to Subcontractor either that Work will be done in the sequence indicated by the progress schedule or within the time indicated therein.  If the Work is behind the progress indicated by such progress schedule, Subcontractor shall not be entitled to any additional time, compensation or damages by reason thereof, nor shall Subcontractor be relieved of its obligation to diligently prosecute the Work.  Further, if the Project is behind schedule and General Contractor determines, in its sole discretion, that it is necessary to expedite completion, Subcontractor agrees to fully cooperate with General Contractor in expediting completion of the Project by furnishing such additional crews, overtime and equipment as General Contractor instructs Subcontractor to furnish and require its personnel to work such additional hours as General Contractor deems are required to expedite the completion of the Project within the time required.

**17.5    Limitation on Additional Compensation.**  As a further inducement to General Contractor to enter into this Subcontract with Subcontractor, Subcontractor agrees that, in the event it incurs any additional costs or expenses because it is required to furnish additional crews, overtime or equipment, it will not seek any additional compensation for such costs or expenses from General Contractor except to the extent that General Contractor, under the terms of the General Contract, is able to recover such costs and expenses from Owner.  General Contractor shall be the sole judge of its entitlement to recover such costs and expenses from Owner.  Subcontractor agrees that General Contractor's decision in that regard shall be final and binding upon Subcontractor.  Subcontractor further agrees to indemnify, defend and hold harmless General Contractor from any and all costs and expenses, including all attorneys' fees and costs, including cost of collection from Subcontractor, which General Contractor may incur in making claim against Owner for Subcontractor's additional costs and expenses.

**17.6    Delay Damages.**  Subcontractor agrees that if Subcontractor, its Sub-subcontractor or suppliers shall delay progress of the Work or any other work on the entire Project, so as to cause any damage or penalty for which General Contractor shall become liable, it shall promptly, on demand, reimburse General Contractor for any such amount.  Further, if the Contract Documents provide for liquidated or other damages for delay beyond the completion date set forth in the Contract

Documents, and are so assessed, then the General Contractor may assess same against Subcontractor in proportion to the Subcontractor's share of the responsibility for such delay.

## ARTICLE 18 – EXCLUSIVE AGREEMENT

**18.1    Exclusivity.** Subcontractor agrees to refrain from entering into any contract or agreement with Owner in regard to extras, omissions or changes in connection with the Work embraced by this Subcontract or any Project Riders but will deal solely with General Contractor in reference thereto. Any violation of this Article shall make Subcontractor liable to General Contractor for ten percent (10%) of the amount of the agreed price for such extras or of the value of such omissions or changes. The ten percent (10%) amount may be deducted by General Contractor from any balance that is due Subcontractor hereunder. In the event no such balance is due, Subcontractor shall promptly pay General Contractor such amount.

## ARTICLE 19 – BONDS

**19.1    Performance and Payment Bonds.** Subcontractor, if so directed, shall provide, at additional cost and pay for a Performance Bond and a Labor and Material Payment Bond equal to one hundred percent (100%) of the Subcontract Price hereunder with a treasury rated corporate surety acceptable to General Contractor. The General Contractor, Owner and any lenders for the Project shall be listed as co-obligees on such bonds. Further, to the same extent and at the same time that General Contractor is required under the General Contract to furnish written guarantees and warranties which may include labor, materials, machinery or equipment which Subcontractor is required to furnish to General Contractor under this Subcontract, Subcontractor shall furnish to General Contractor its written guarantee and warranty of such labor, materials, machinery or equipment and, in addition, shall furnish written guarantees and warranties executed by each of its Sub-subcontractors and suppliers in relation to each item of labor, materials, machinery or equipment which they shall furnish. Such written guarantees and warranties shall run in favor of General Contractor, Owner and every other person, firm and corporation to whom General Contractor is required to furnish a guarantee and warranty under the terms of the General Contract.

**19.2    Date of Bonds.** Any bonds required hereunder will be dated the date of this Subcontract and will be furnished by Subcontractor to General Contractor as a pre-condition to the commencement or continuation of the Work.

**19.3    Improvement Bonds.** The Subcontractor hereby agrees to cooperate with and assist the General Contractor and Owner in taking such action as is necessary to exonerate and release the Owner from its obligations under any and all street, gutter, sidewalk and similar improvement bonds related to the Project, if any, as quickly as possible.

## ARTICLE 20 – LABOR RELATIONS

**20.1    Labor Union Agreements.** General Contractor, in its own name or through an association or associations acting in its behalf, has entered into or become bound by an agreement or agreements with labor unions and may hereafter enter into or be bound by other such agreements. Subcontractor agrees and will cause its Sub-subcontractors to agree that they will not employ any labor or do anything which may or does result in a labor controversy or dispute between the General Contractor and any labor union or which may or does result in liability on the part of General Contractor to Owner or to any labor union or any of its members,

**20.2    Labor Indemnity.** Subcontractor agrees to indemnify, defend and protect General Contractor against and hold it harmless from any and all Claims in connection with or arising out of Subcontractor's failure to maintain harmonious labor relations at the Project site or any claim or work stoppage by or liability to Owner, any labor union or any member of any labor union which in any respect results from or is in any respect claimed by any labor union or any member thereof to result from any act or omission of Subcontractor, Sub-subcontractors, or their agents or employees. This indemnity shall survive the termination of the Subcontract, any Project Riders and General Contract and final completion of the Work.

**20.3    Insure Against Labor Unrest.** General Contractor may pay to insure labor peace and to avoid strike or other legal action an amount owed by Subcontractor and Owner may pay such sums directly to the Union, its members, or the appropriate fund(s). Subcontractor expressly designates and authorizes General Contractor to act as its agent for this purpose and such payment made shall be a set-off to any amount owed to Subcontractor, or if in excess of any amount owed, Subcontractor shall reimburse Owner upon demand including related costs of administration, collection, accounting, or attorneys' fees. General Contractor's option, as stated herein, shall not limit other remedies for Subcontractor's default, as provided in Article 9. Subcontractor shall, when requested by General Contractor, furnish evidence of monthly payments made to the various fringe benefit funds within seven days of General Contractor's request.

**20.4    Equal Employment.**   Subcontractor shall comply strictly with all Legal Requirements pertaining to equal employment opportunity or to discrimination in employment or conditions of employment on account of race, color, religion, sex, national origin, ancestry or age. All provisions required by the Legal Requirements on the subjects of discrimination and hiring or employment or the maintenance of fair and equal employment opportunities shall be deemed to incorporated into this Subcontract by this reference. Without limiting the generality of the foregoing, the text of Part 11 of Executive Order 11246, as amended, is by this reference incorporated as though fully set forth herein. The duties of the "contractor", as set forth in Section 202 of the said Executive Order are hereby specifically undertaken by Subcontractor.

**20.5    General Contractor's or Owner's Rules.**   General Contractor or Owner may promulgate rules and regulations at any time for the safe, orderly and efficient conduct of all operations at the site of the Work. Subcontractor shall enforce the keeping and observance by all of its employees, independent contractors, Sub-subcontractors and suppliers of such rules and regulations. If, in the opinion of General Contractor or Owner, an employee of Subcontractor or any of its Sub-subcontractors are not qualified to perform the Work assigned to them or are guilty of improper conduct or are not working in harmony with the other trades, Subcontractor shall forthwith remove such employee or Sub-subcontractor and shall not reinstate them to participate in the performance of the Work at the Site except with the written consent of General Contractor and Owner.

**20.6    Labor Representations and Warranties.**   Subcontractor shall not employ or use persons, Sub-subcontractors or other entities, means, materials or equipment which it has reason to know may cause strikes, work stoppages or any other disturbances by workers employed by Owner, General Contractor, Subcontractor, Sub-subcontractors or others. To induce General Contractor to enter into this Subcontract, Subcontractor represents and warrants that to the best of its knowledge, it neither knows nor has notice of the likelihood of any such disturbances during the performance of the Work.

## ARTICLE 21 – ALTERNATIVE DISPUTE RESOLUTION

**21.1    Mediation and Arbitration.**   Except as otherwise specifically provided for in this Subcontract, any controversy or claim arising out of or relating to this Subcontract, Project Riders, or the breach thereof, which is not disposed of by written agreement of all parties involved, shall, at the election of General Contractor, be submitted to mediation, which, if unsuccessful shall be resolved by arbitration, to be convened and held in Chicago, Illinois, unless otherwise agreed, in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association in effect.

**21.2    Arbitrator Award.**   The arbitrator(s) shall be authorized to make an award that is deemed just, provided, however, that the award shall be made in writing with findings of fact and a statement of reasons for the award. The award rendered by the arbitrator(s) shall be final and binding, and judgment may be entered upon the award in accordance with applicable law in any court having jurisdiction.

**21.3    Joinder.**   The parties shall provide for the joinder of necessary parties, including, but not limited to, entities with common questions of law and fact, entities whose presence is necessary for complete relief, entities with a material interest, and Sub-subcontractors, Owner, Architect or their employees, independent contractors and subcontractors.

**21.4    Continuing Work During Dispute Resolution.**   Unless otherwise agreed in writing, Subcontractor shall carry on the Work and maintain the Schedule of Work pending arbitration, and, if so, General Contractor shall continue to make all undisputed payments.

## ARTICLE 22 – GENERAL CONTRACT

**22.1    Subcontractor Bound by General Contract.**   Subcontractor agrees to be bound by the provisions of the General Contract insofar as they pertain to the Work to be done by Subcontractor hereunder and to perform in behalf of General Contractor each and all of General Contractor's obligations under the General Contract in reference to the Work hereby subcontracted to Subcontractor. Any decision of Architect or Owner which is binding on General Contractor shall also be binding on Subcontractor. So as not to delay the progress of the Project or to increase the cost to Owner or General Contractor, in the event any questions arises during the course of the Project as to which trade has the obligation under the Contract Documents to furnish a specific item of labor or material, Subcontractor agrees to abide by the decision of the Architect as to which trade shall furnish such item or labor or material and, upon receipt of said decision, agrees to promptly and properly furnish the same without additional cost to Owner or General Contractor.

**22.2    General Contract.**   The General Contract(s) incorporated herein by reference is made an integral part of this Subcontract. The General Contract includes, but is not limited to, the contract between General Contractor and Owner or its

agent, all addenda, modifications, revisions, specifications, details, drawings, blueprints, all general, technical, and supplementary and special terms and conditions, as well as any and all other documents listed in or referred to by the General Contract. The General Contract can be reviewed by Subcontractor at General Contractor's principal place of business during normal business hours. Subcontractor is bound, responsible, obligated and liable to General Contractor, as General Contractor is bound, responsible, obligated and liable under the General Contract to Owner and Architect.

**22.3    Resolution of Conflict Between General Contract and Subcontract.** The General Contract and this Subcontract shall be interpreted together and in harmony with one another. However, in case of conflict between the General Contract and this Subcontract, this Subcontract shall govern the relationship between General Contractor and Subcontractor. Subcontractor must call any such conflict or discrepancy to General Contractor's attention, in writing, prior to executing this Subcontract or when the existence of such conflict becomes known.

**22.4    Flow Down.** Notwithstanding paragraph 1.2, as with all provisions of this Subcontract, Subcontractor shall cause its Sub-subcontractors to be bound by this provision, and the provisions incorporated herein by reference, as Subcontractor is bound to General Contractor and General Contractor is bound to Owner.

### ARTICLE 23 – OWNER'S APPROVAL OF SUBCONTRACTOR

**23.1    Approval and Effective Date.** This Subcontract is conditioned upon approval of Subcontractor by Owner and Architect, and by the requisite federal, State and municipal agencies, if they are required. If on the date this Subcontract is executed by General Contractor there shall not be a binding General Contract, the effective date of this Subcontract shall be suspended until such date as General Contractor shall notify Subcontractor to go forward with the Work. If General Contractor shall notify Subcontractor that no General Contract has been entered into, this Subcontract shall become null and void and of no effect without any liability to General Contractor from Subcontractor or Sub-subcontractor.

### ARTICLE 24 - SCHEDULE

**24.1    Schedule.** General Contractor has contracted to complete the Project **October 1, 2007.** In accepting this Subcontract, Subcontractor agrees that it will perform the Work so as to permit completion as rapidly as possible and in accordance with the above schedule. If Subcontractor falls behind in performance of the Work, it shall, without additional compensation, provided the General Contractor a written schedule showing how it will get back on Schedule and Subcontractor shall work such overtime and provide additional forces, crews and equipment as General Contractor shall direct until the Work is, in the sole judgment of General Contractor, in accordance with the schedule of General Contractor.

**24.2    Subcontractor's Liability for Damages.** In the event the Work is not completed within the allotted time, Subcontractor agrees that it shall be liable to General Contractor for any penalty or damages that it may have caused by reason of its delaying the completion or progress of the Work, and in the event that Subcontractor breaches any of the provisions of the Subcontract, Subcontractor shall reimburse General Contractor for all extra expense, of every kind and nature, incurred or paid by General Contractor as a consequence of Subcontractor's breach of any provision of this Subcontract.

**24.3    Payment Does Not Constitute Acceptance.** No approval or payment made under this Subcontract, or occupancy of the Project, partial or entire, shall be evidence of the level of performance of this Subcontract, either wholly or in part, and no payment shall be construed to be an acceptance of defective Work or improper materials.

### ARTICLE 25 – GOVERNING LAW

**25.1    Governing Law.** This Subcontract shall be governed by the law in effect in the State of Illinois.

### ARTICLE 26 - MISCELLANEOUS

**26.1    Headings.** The headings of the Articles are included for convenience of reference only and shall not be deemed to constitute a substantive part of the Subcontract and all incorporated Project Riders.

**26.2    Severability.** The illegality, unenforceability, or non-applicability of any provision hereof shall not affect the remaining provisions of this Subcontract, but such remaining provisions shall be construed as though such illegal, unenforceable or non-applicable provision had not been included herein.

**26.3** **Entire Agreement.** The Subcontract and Project Riders executed hereafter constitute the entire agreement between the parties hereto. The parties agree that the Subcontract contains all of the terms and conditions agreed upon between them and that all prior conversations, understandings, agreements, premises, letters, quotations, qualifications and writings are null and void unless they are specifically listed in the Subcontract or any Project Rider. It is especially agreed that no orders, interpretations, or modifications of the Contract Documents shall be construed as in any way altering or reducing the Work herein expressed, unless such orders, interpretations, or modifications are in writing and signed by the General Contractor. The Subcontract shall not be amended or modified except as provided herein by written instrument signed by both parties hereto, and no provision of this Subcontract and any Project Riders executed hereafter may be waived except by written instrument signed by both parties hereto.

**26.4** **Inconsistencies in Contract Documents.** Should inconsistencies or omissions appear in the Contract Documents, it shall be the duty of Subcontractor to so notify General Contractor in writing within **three (3)** working days of Subcontractor's discovery thereof unless a shorter time provision is contained herein or in the Contract Documents for any notice. Upon receipt of said notice, General Contractor may instruct Subcontractor as to the measures to be taken, and Subcontractor shall comply with General Contractor's instructions.

**26.5** **Independent Contractor.** Nothing herein contained shall be construed as creating the relationship of employer and employee or principal and agent as between the parties hereto, and the Subcontractor shall be deemed at all times to be an independent contractor with respect to its performance hereunder.

**26.6** **Accounting and Records.** The Subcontractor shall keep and maintain full, complete and detailed records for the Work, including the proper maintaining of books, accounts, documents, papers and records (collectively "Records"). Provisions of this Paragraph shall be applicable to the Records of Sub-subcontractors performing Work, and the Subcontractor shall include such provisions in all its Sub-subcontracts and other agreements.

**26.7** **Record Retention Policy.** The Subcontractor shall keep all of its Records, as defined herein, relating to the Work for **ten (10)** years after the completion of the Work.

**26.8** **Confidentiality.** The Subcontractor shall treat all information relating to the Project and all information supplied to the Subcontractor as confidential and proprietary information and shall not permit the release of such information to others or make any public announcement or publicity releases without the General Contractor's prior written authorization. Also, the Subcontractor shall require all Sub-subcontractors to comply with the requirements of this Paragraph.

**26.9** **Ownership of Documents.** The Contract Documents, including any drawings and specifications developed by the Subcontractor or its Sub-subcontractors, referred to herein are and shall remain the property of the Owner for its unrestricted use without further permission or involvement of the Subcontractor, whether the Work for which the Construction Documents were prepared is constructed or not. Any misuse or reuse of the Construction Documents for another project without written verification or adaptation by the Owner shall be at the Subcontractor's sole risk and shall not relieve the Subcontractor from liability regarding such misuse or reuse.

**26.10** **Holidays.** When performance of an obligation or satisfaction of a condition set forth in this Subcontract is required on or by a date that is a Saturday, Sunday, or a legal holiday (recognized by the party to be charged), such performance or satisfaction shall instead be required on or by the next business day following that Saturday, Sunday or holiday notwithstanding any other provision of this Contract.

**26.11** **Licensing.** If the Work requires such, the Subcontractor shall be licensed and regulated by the agency which has jurisdiction to investigate complaints against contractors if a complaint regarding a patent act or omission is filed. The Subcontractor represents that it and all others performing the Work are properly licensed to undertake the Work.

### ARTICLE 27 – GUARANTEES AND WARRANTEES

**27.1** **Guarantees and Warrantees.** Subcontractor guarantees and warrants its Work against all deficiencies and defects in materials or workmanship and as called for in the Contract Documents.

**27.2** **No Cost.** Subcontractor agrees to fully and timely satisfy such guarantee and warranty obligations which appear within the guarantee or warranty period established in the Contract Documents without cost to Owner or General Contractor.

**27.3    Default Guarantees and Warrantees.** If no guarantee or warranty is required of the Subcontractor in the Contract Documents, then Subcontractor shall guarantee or warrant the Work, as described above, for the period of **two (2)** years from the date(s) of actual completion of all or designated portion(s) of Subcontractor's Work and Owner's final acceptance of the Project as a whole.

**27.4 .    Call-Back Service.** The Subcontractor shall warrant its Work and provide **forty-eight (48)** hour call-back service, and immediate call-back service in emergency situations, for the equipment and materials provided by the Subcontractor for a period of a minimum of **one (1)** year after completion and acceptance of the Work.   Equipment or building systems/components may be warranted for a period in excess of **one (1)** year by the manufacturer, as provided by the Contract Documents.   ·

## ARTICLE 28 - LAYOUT

28.1    Subcontractor shall provide and be responsible for all layout and field measurements in connection with the Work.

## ARTICLE 29 - CLEAN-UP/DAMAGE

**29.1**    Subcontractor shall be responsible for damage to new or existing work caused by the execution of Subcontractor's Work and shall replace or repair such work at its own expense.  Subcontractor shall be responsible for cleaning adjacent roads of mud, dirt and excessive dust caused by Subcontractor's trucks leaving the site and shall provide flag persons, if so required by traffic or other conditions.  Subcontractor is to be responsible for daily clean up and the complete removal from the site of all rubbish and debris resulting from Subcontractor's operation as directed by job superintendent.

## ARTICLE 30 - COORDINATE

**30.1**    Subcontractor shall coordinate its work with other contractors and in accordance with job sequencing, as required per the Construction Schedule, in order to avoid any unnecessary delay to the Project.

## ARTICLE 31 - TAXES ·

**31.1**    All applicable state, city and local taxes are included in the Subcontract Price.

## ARTICLE 32 - SCOPE

**32.1**    This Subcontract includes, but shall not be limited to, all labor, materials, supplies, equipment, tools and services required to furnish and install **Demolition** in strict accordance with all drawings and specifications, general conditions, supplemental conditions all inclusive as listed in EXHIBIT "A" attached hereto and made a part of this Subcontract, **specifically SPECIFICATION SECTION (S) Design Build** all inclusive and attached and made a part of this Subcontract.

**32.2**    The Contract Documents indicate the general scope and character of the Work in terms of architectural design, building dimensions, major architectural elements and the types of structural, mechanical and electrical systems required for the satisfactory completion of the Work.

**32.3**    Based on Subcontractor's expertise in its portion of the Work, and based on the information contained in the Contract Documents, Subcontractor acknowledges that the information in the Contract Documents is sufficient for it to provide a complete and properly functioning system conforming to all applicable codes and in accordance with generally accepted high quality standards for the agreed Subcontract Price.  Furthermore, Subcontractor agrees to provide all the necessary labor, equipment, materials, accessories and appurtenances (whether or not shown, detailed, described or specified) to furnish and install a complete system in every respect.  All incidental items necessary to complete the Work to be performed under this Subcontract and any work customarily done by Subcontractor with respect to work of this kind, shall be provided by Subcontractor at no additional cost to Owner or General Contractor, notwithstanding the fact that such Work or items may have been omitted from the drawings and specifications or other Contract Documents.

## ARTICLE 33 - SURFACES

**33.1**    All surfaces to receive **Demolition** shall be examined by Subcontractor prior to installation of materials.    Any irregularities found in these surfaces shall be reported to General Contractor for correction.    Subcontractor shall be held responsible for final appearance, including levelness, plumbness and flatness, of all **Demolition** installed.

## ARTICLE 35 - PRINCIPAL ITEMS

**35.1**    Subcontract includes, but is not limited to, the following list of principal items:

   1.   **See Exhibit "C"**

## ARTICLE 36 – AMOUNT

**36.1**    The Subcontract Price contained in Article 3 was determined by the following calculation:
       **1. Lump Sum of $857,900.00**

## ARTICLE 37 - SCHEDULE

**37.1**    The Subcontract Schedule is as follows:

          **Installation**          **06/18/07 until complete**

## ARTICLE 38 - SHOP DRAWINGS/SAMPLES

**38.1**    Shop drawings and samples shall be submitted in accordance with the instructions in the Contract Documents, unless stated otherwise in this Subcontract.

## ARTICLE 39 - COORDINATE SHOP DRAWINGS

**39.1**    Subcontractor shall assist and cooperate in the preparation of a set of coordinated shop drawings showing all the mechanical, structural, plumbing, HVAC, fire life safety and electrical work in the boiler rooms, equipment rooms, plenum spaces, shafts, corridors and all other areas of possible conflict, height restrictions or other interference among the trades on the Project.    Such drawings shall also be considered with the structural components and other major items which are to be installed by General Contractor and other subcontractors.    The preparation of coordinated drawings shall be completed as soon as possible and in such time that all Work can be installed without causing delay to General Contractor's schedule.    Any relocation and resubmission of shop drawings deemed necessary by Architect shall be accomplished by Subcontractor at no additional cost.

## ARTICLE 40 - CUTTING/PATCHING

**40.1**    Cutting and patching shall be provided as indicated in the Contract Documents.

## ARTICLE 41 - HOISTING

**41.1**    Subcontractor shall provide its own hoisting facilities or crane, including all labor for hoisting.

## ARTICLE 42 - SAFETY

**42.1**    Subcontractor must adhere to Bulley & Andrews, LLC/The Meyne Company, division of Bulley & Andrews, LLC's "Safety Rules and Regulations", a copy of which is attached hereto and receipt of which is hereby acknowledged by Subcontractor, and all applicable OSHA requirements and all conditions and requirements of the Hazard Communications

Standard. A representative of each subcontractor and Sub-subcontractor working on the Project must attend the weekly safety meeting and subcontractor coordination meeting.

## ARTICLE 43 - PROTECTION OF SURFACES

**43.1**  Subcontractor shall protect all surroundings and adjacent surfaces for overspray, overflow, spillage, and all other damage. All materials applied by Subcontractor to surface not receiving or requiring same shall be removed and surfaces immediately restored to their prior condition by Subcontractor.

## ARTICLE 44 - DEMOLITION BY OTHERS

**44.1**  Unless provided otherwise in a Project Rider, demolition shall be by others. Subcontractor shall disconnect, re-rout, cap and do all necessary temporary Work as required. All existing systems to be removed shall be clearly marked for removal by the demolition crew.

## ARTICLE 45 - CHANGES/EXTRAS

**45.1**  No changes or additional work proposed by General Contractor or Owner shall proceed or be made part of any Application for Payment without the issuance of a fully executed Bulley & Andrews, LLC Change Order. Application for Payment or Change Orders for work not covered by this Subcontract will not be accepted by General Contractor.

## ARTICLE 46 - BENEFICIAL OCCUPANCY

**46.1**  Owner may take beneficial occupancy of the Project prior to Final Completion. Such action by Owner shall not constitute final acceptance of Subcontractor's Work.

## ARTICLE 47 - INSURANCE

**47.1**  Subcontractor shall immediately submit a valid Certificate of Insurance and a copy of the insurance policy for each type of insurance herein required with the Additional Insureds listed as follows:

| | |
|---|---|
| **OWNER:** | **Barat Woods** |
| **PROJECT:** | **Barat Woods** |
| **ARCHITECT:** | **Geudtner & Melichar Architects** |
| **GEN. CONTR:** | **Bulley & Andrews, LLC** |
| **LENDER:** | **Harris, NA and/or its successors or assigns** |

**47.2**  The coverage in the amount required herein or in the General Contract afforded to the above must be primary and non-contributory for all Additional Insureds. Any other insurance available to any of the Additional Insureds will be considered excess to any primary, excess and/or umbrella coverage provided by Subcontractor.

**47.3**  The umbrella and/or excess coverage which Subcontractor is required to provide in the amount required herein or in the General Contract to the Additional Insureds shall respond on behalf of the Additional Insureds prior to and without contribution from any policy issued to any of the Additional Insureds whether such insured's policy is designated as primary or excess. (This provision does not apply to any policy of insurance obtained for the Additional Insureds by other subcontractors on the Project).

**47.4**  It is understood and agreed that authorization is hereby granted to General Contractor to withhold payments to Subcontractor until all properly executed Certificates of Insurance and valid copies of all policies and endorsements providing insurance as required herein accompanied by a signed Subcontract are received by General Contractor. This requirement applies to all Sub-subcontractors engaged by Subcontractor to complete Work on the Project for, or on behalf of Subcontractor. The failure of General Contractor to withhold such payments or obtain the required copy of the Certificates of Insurance and the policies and endorsements shall not be deemed to be a waiver of the Subcontractor's obligation to provide the insurance required under the Subcontract.

## ARTICLE 48 - PAYOUT

48.1    Prior to the submission of Subcontractor's Application for Payment, Subcontractor agrees to submit a detailed long-form affidavit listing the amounts for all costs including, but not limited to, all its labor, materials and Sub-subcontractors, the total of which adds up to the Subcontract Price. Subcontractor shall simultaneously submit a dollar breakdown of its Work by categories and areas to assist Owner, Architect and General Contractor in reviewing and approving monthly Applications for Payment. Applications for Payment will not be considered without these completed forms. The invoice and necessary paperwork must be submitted to General Contractor's office by the 25th of every month or it will be deemed submitted on the next month's Application for Payment date.

## ARTICLE 49 - PARKING RESTRICTIONS

49.1    There will be no parking on the Project site. Parking for "Work Vehicles" will be at the discretion of General Contractor's job site superintendent or agent.

## ARTICLE 50 - DELIVERIES

50.1    All deliveries are to be made to General Contractor's construction office and be addressed as follows:

> **Bulley & Andrews, LLC**
> **700 East Westleigh Road**
> **Lake Forest, IL 60045**
> **Attn: Wally Jakubowski**
> **Phone: 312-296-5932**

## ARTICLE 51 - MEETINGS

51.1    Meeting will be held once per week as scheduled by General Contractor's Project Superintendent. All trades on site or scheduled to be on site within the week, or as directed by General Contractor, are required to attend. Additional attendance may be required at Owner/Architect meetings.

## ARTICLE 52 - LICENSE

52.1    Subcontractor is required to purchase and have on file a City of Lake Forest Business License and otherwise to be a duly qualified licensed contractor in good standing as required by the jurisdiction in which the Project is located and for the types of Work required under this Subcontract and the Contract Documents.

## ARTICLE 53 - STORAGE

53.1    Storage at the Project site will be at the sole discretion of General Contractor.

## ARTICLE 54 - LEAD TIME

54.1    Subcontractor will provide, upon written request of General Contractor, written confirmation from a manufacturer disclosing product lead time, delivery and fabrication.

## ARTICLE 55 - INSPECTIONS

55.1    Subcontractor is responsible for scheduling all inspections of its Work with any retained inspection or testing entities and with all local and State governing agencies so as not to delay the Project.

## ARTICLE 56 - DESIGN-BUILD

56.1    Subcontractor will be solely responsible for designing and installing the Work described in this Subcontract together with all applicable systems and subsystems and will fully integrate the Work into and coordinate it with the work described in the General Contract, including, but not limited to, all work performed by General Contractor, other subcontractors of General Contractor, Owner and any contractors of Owner. Subcontractor agrees to design and install the Work in accordance with all applicable laws, codes and ordinances, building codes, rules and regulations of the jurisdiction in which the Work is to be installed.

56.2     Subcontractor hereby specifically acknowledges and declares that the Contract Documents have been received by Subcontractor and are sufficient to enable it to design, install, and determine the cost of the Work. Subcontractor has reviewed the Contract Documents including, but not limited to, the drawings, the specifications, and all addenda and other documents relating to the Work, and determined that such drawings, specifications, addenda and other documents are sufficient to enable Subcontractor to design and construct the Work outlined therein and all Work reasonably inferable therefrom in accordance with applicable laws, codes and ordinances, building codes, rules and regulations, and otherwise to fulfill all of its obligations under the Contract Documents. In addition, if Subcontractor performs any construction activity and if it knows or reasonably should have known that any of the Contract Documents contain an error, inconsistency or omission, Subcontractor shall be responsible for such performance and shall bear the cost for correction thereof.

56.3     If any of the Work including design Work is required to be inspected or approved by any retained inspection or testing entities or public authority, Subcontractor shall cause such inspection or approval to be performed. No inspection or approval performed or failed to be performed by Owner or any retained inspection or testing entities hereunder shall be a waiver of any of Subcontractor's obligations hereunder or be construed as an approval or acceptance of the design or Work or any part thereof.

56.4     Subcontractor shall review the Contract Documents which shall include its own design/build documents and shall notify General Contractor, Owner and Architect of any discrepancy that it knows of or reasonably should know of between the Contract Documents and applicable laws, statutes, ordinances, building codes, rules and regulations. Subcontractor shall completely research and not violate any zoning, setback or other locational requirements of applicable laws, statutes, ordinances, building codes, rules and regulations, or of any recorded or unrecorded covenants of which Subcontractor has or reasonably should have knowledge. If Subcontractor observes that portions of the Contract Documents are at variance with applicable laws, codes and ordinances, building codes, rules and regulations, Subcontractor promptly shall notify Owner, General Contractor and Architect in writing, and necessary changes shall be accomplished by appropriate modification.

56.5     Specifications, shop drawings and all drawings implementing the design required by Subcontract shall be submitted to General Contractor for review and approval by Architect and its engineer and consultants.

56.6     Subcontractor shall meet with Owner, Architect and General Contractor and their subcontractors and consultants in order to ascertain the requirements of the Project and incorporate such requirements into the design of the respective system. Such requirements include, but are not limited to, Owner's equipment, furniture systems, office fixtures, plumbing, electrical, fire life safety systems, building components such as pumps, motors, lighting, HVAC equipment, exhaust fans and all other requirements. Further, Subcontractor shall be responsible for coordinating its Work with Architect, General Contractor and all other subcontractors and material and equipment suppliers on the Project.

56.7     Subcontractor and any consultants retained by it shall maintain professional liability insurance with a company, in the amount and with deductibles satisfactory to General Contractor and Owner, including contractual liability insurance against the liability for indemnification under this Subcontract and the General Contract as applicable to this Subcontract.

56.8     Subcontractor shall furnish to General Contractor Certificates of Insurance and copies of insurance policies evidencing the required coverages and a copy of its professional liability policy. No policy shall be canceled or modified without thirty (30) days prior written notice to General Contractor. The professional liability policies shall be continued in effect for three (3) years following final payment to Subcontractor.

**ARTICLE 57 - EXHIBITS**

57.1    The Exhibits attached to this Subcontract and incorporated herein and made a part of this Subcontract as if entirely restated herein are as follows:

Exhibit "A" ...................................................................................................List of Contract Documents

Exhibit "B"...................................................................................................Insurance and Indemnity Requirements

Exhibit "C"...................................................................................................Scope of Services

Executed in good faith and understanding and on the date and year first written above.

SUBCONTRACTOR:                                          GENERAL CONTRACTOR:

J & L Management                                              Bulley & Andrews, LLC

By:_____                          By:_____

_____                                _____
   PRESIDENT                                                          **President**
   Title/Position

BULLEY & ANDREWS, LLC SUBCONTRACTOR CONTRACT 122002

COPY

Image# 042772910003 Type: LNM
Recorded: 01/30/2008 at 08:20:32 AM
Receipt#: 2008-00004924
Total Amt: $39.00 Page 1 of 3
IL Rental Housing Fund: $10.00
Lake County IL Recorder
Mary Ellen Vanderventer Recorder
File 6299437

This document prepared by and
after recording return to:
Robert A. Cohen
David A. Axelrod & Associates
20 S. Clark, Ste. 2200
Chicago, Illinois 60603
(312) 782-4600

STATE OF ILLINOIS )
) ss.
COUNTY OF LAKE )

Claimant, J & L Management Corporation of Ohio (hereinafter CLAIMANT) hereby files Notice and Claim for Mechanic's lien against Barat Woods LLC, 745 East Woodland Road Lake Forest, Illinois 60045 (hereinafter "OWNER"), and Bulley & Andrews, LLC, 1759 W. Armitage Avenue, Chicago, Illinois 60622 (hereinafter, "CONTRACTOR"), and states as follows:

At all times pertinent hereto, the Owner was the owner of the property legally described in Exhibit A, commonly known as the former Barat College site, 700 East Westleigh Road, Lake Forest, Illinois 60045, further identified as PIN No. 16-04-200-008 (PROPERTY).

At some date not known to the CLAIMANT, CONTRACTOR entered into a contract with OWNER or one whom the OWNER knowingly authorized to contract on its behalf to perform certain improvements to the PROPERTY.

HARRIS N.A. may have or claim to have some interest in the Property under and by virtue of the mortgage and other lien documents against the PROPERTY, and as express agent for other undisclosed lenders, and accordingly is being given notice of the Lien Claim.

**EXHIBIT D**

CONTRACTOR, on or about the 13th day of June, 2007, entered into an agreement with CLAIMANT wherein CLAIMANT was to provide demolition services to certain specified structures at the former campus site. The contract price was $857,900, plus $14,000.00 for a house change order, for a total of $871,900.00.. All such services provided by CLAIMANT were of the type, quality, quantity, and value required by the CONTRACTOR and were to the actual and reasonable value of $628,111.32, including set-offs and credits. Claimant's last day of demolition work at the jobsite was October 26, 2007. CLAIMANT's substantial demolition equipment remained on site until November 15, 2007, at which time CONTRACTOR ordered its removal.

After the allowance of all payments in the amount of Six Hundred Twenty Eight Thousand, One Hundred Eleven and 32/100 ($628,111.32), and all credits and set-offs, there remains due and owing to CLAIMANT from the OWNER and CONTRACTOR the sum of **TWO HUNDRED FORTY-THREE THOUSAND, SEVEN HUNDRED EIGHTY-EIGHT AND 68/100**, including retainage, for which CLAIMANT claims a mechanic's lien against the property above-described, the improvements thereon, and any monies or other considerations due to or to become due to CONTRACTOR from the OWNER and interest thereon from October 26, 2007 at the statutory rate.

**DATED** this 24th day of January, 2008.

J & L MANAGEMENT CORPORATION OF OHIO

By: _____
Philip Kennedy,
Its President

STATE OF ~~ILLINOIS~~ *MICHIGAN* )
                                  ) ss.
COUNTY OF *MACOMB* )

Philip Kennedy, being first duly sworn, on oath deposes and says that he is the President of J & L Management Corporation of Ohio, and as such he is authorized to make this affidavit on its behalf; that he has read the foregoing notice and claim for Mechanic's lien by him subscribed, knows the contents thereof and states the same to be true.

_____

**SUBSCRIBED AND SWORN** to before me this
24rd day of January, 2008.

_____
Notary Public

My commission expires: _1_|_5_|_2014_

Judith H. Ranieri, Notary Public
State of Michigan, County of Macomb
My Commission Expires 1/5/2014
Acting in the County of *MACOMB*

## CERTIFICATE OF SERVICE

**YASSMEEN SALEH**, under penalty of perjury as set forth in Illinois Civil Code Section 1/1-09, certifies that she served a true and correct copy of the foregoing notice and claim for lien upon:

Owner's Registered Agent:
Robert C. Gebert
Barat Woods, LLC
137 N. Oak Park Avenue, Suite 201
Oak Park, Illinois 60301

Owner's Principal:
Robert G. Shaw
Barat Woods, LLC
745 East Woodland Road
Lake Forest, Illinois 60045

Registered Agent, General Contractor:
Michael E. Barry
Drinker Biddle Gardner Carton
191 N. Wacker Drive, Suite 3700
Chicago, Illinois 60606

Agent for General Contractor:
Paul Plapp
Bulley & Andrews, LLC
1755 W. Armitage Avenue
Chicago, Illinois 60622

Mortgagee, Agent for Other Lenders:
Tom Porzak
Harris N.A.
333 Park Avenue
Glencoe, Illinois 60022

Registered Agent, Architect:
Mark C. Friedlander
Schiff Hardin LLP
233 S. Wacker Drive, Suite 7500
Chicago, Illinois 60606

Architect's Principal:
Diana K. Melichar
Melichar Architects
711 N. McKinley Road
Lake Forest, Illinois 60045

by mailing a copy in a properly addressed, postage prepaid envelope, certified mail, return receipt requested, delivery restricted to addressee, in the United States Mail at Chicago, Illinois all this 24th day of January, 2008.

_Yassmeen Saleh_
Yassmeen Saleh